Rec 068598

ORIGINAL

FILED

SEP 4 2008

U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SCOTT A. JACKSON, §
Plaintiff, §
§
v. § NO. 08-624 T
§
UNITED STATES OF AMERICA, §
§
Defendant. §

COMPLAINT

Scott A. Jackson, Plaintiff, for his cause of action against the United States of America, alleges as follows:

NATURE OF ACTION

1. This is a suit arising under the internal revenue laws of the United States for the refund of taxes illegally and erroneously assessed and collected from Plaintiff.

THE PARTIES

2. Plaintiff is a citizen of the United States who resides at 3215 Hanover Street, Dallas, Texas, 75225, and his Social Security Number is XXX-XX-6068.

3. Defendant is the United States of America and may be served by the Clerk of this Court by delivering five copies of this Complaint to the Honorable Michael B. Mukasey, Attorney General of the United States, 950 Pennsylvania Avenue, NW, Washington, D.C., 20530-0001, or wherever he may be found.

JURISDICTION

4. This court has jurisdiction of this action under the authority of 28 U.S.C. §§1346 and 1491.

FACTS

5. On June 3, 2008, the Internal Revenue Service ("IRS") made assessments (hereinafter the "Assessments") against Plaintiff for the so-called "Trust Fund Recovery Penalty" of IRC § 6672, with respect to excise taxes allegedly unpaid by G&H Manufacturing, Ltd. ("G&H"), for the following taxable periods and amounts:

| **Taxable Period** | **Assessment** |
|---|---|
| 4th Quarter 2003 | $60,650.79 |
| 1st Quarter 2004 | $108,356.38 |
| 2nd Quarter 2004 | $111,906.30 |
| 1st Quarter 2005 | $32,478.49 |
| TOTAL | $313,391.96 |

6. On or about July 7, 2008, the IRS applied all of Plaintiff's (and his wife's) 2007 individual income tax (Form 1040) overpayment, in the amount of $4,147.18, to the assessed trust fund recovery liability for the fourth quarter of 2003. This $4,147.18 represents the tax associated with G&H's sale of at least one taxable unit for the period. A copy of the IRS notice regarding the application of the overpayment is attached hereto as Exhibit A.

7. On July 29, 2008, Plaintiff made a designated payment for the trust fund recovery liability for the first quarter of 2004 in the amount of $2,410 which represents the tax associated with G&H's sale of at least one taxable unit for the period. Copies of the designated payment letter and the check are attached hereto as Exhibit B.

8. On July 29, 2008, Plaintiff made a designated payment for the trust fund recovery liability for the second quarter of 2004 in the amount of $2,074 which represents the tax associated

with G&H's sale of at least one taxable unit for the period. Copies of the designated payment letter and the check are attached hereto as Exhibit C.

9. On July 29, 2008, Plaintiff made a designated payment for the trust fund recovery liability for the first quarter of 2005 in the amount of $2,134 which represents the tax associated with G&H's sale of at least one taxable unit for the period. Copies of the designated payment letter and the check are attached hereto as Exhibit D.

10. Within two years after the penalties described in paragraphs 6, 7, 8, and 9 of this Complaint were collected from Plaintiff, Plaintiff timely filed four IRS Forms 843, *Claim for Refund And Request For Abatement* for the fourth quarter of 2003, the first quarter of 2004, the second quarter of 2004, and the 1st quarter of 2005 (the "Claims"). The Claims were filed with the office of the Internal Revenue Service in Dallas, Texas on July 29, 2008, requesting that each of the payments designated for the specific period be refunded, together with interest thereon in accordance with law. Copies of the Claims are fully incorporated by reference and attached hereto respectively as Exhibit E, Exhibit F, Exhibit G, and Exhibit H.

11. On August 26, 2008, the IRS's Technical Services Advisory Group Manager in Dallas, Texas disallowed Plaintiff's claim for refund and abatement for the fourth quarter of 2003, the first quarter of 2004, the second quarter of 2004, and the first quarter of 2005. A copy of IRS Letter 3783 disallowing the Claims is attached hereto as Exhibit I.

12. Plaintiff is not liable for the taxes referenced in the Assessments. The refusal of the IRS to refund to Plaintiff all monies paid or collected with respect to the assessment including, in particular, the monies referenced in Exhibit A, Exhibit B, Exhibit C and Exhibit D, are erroneous and illegal.

13. Plaintiff is entitled to refund of all monies paid or collected with respect to the Assessments, together with interest thereon according to law.

14. Plaintiff further asserts that the Assessments are barred by the applicable statutes of limitation.

15. Plaintiff makes a claim for administrative costs and litigation costs incurred in connection with the Assessments, under IRC § 7430 and as otherwise permitted by law.

16. Mr. Jackson further reserves the right to assert any additional claims which demonstrate that he is not liable for the Assessments as may be discovered administratively or through formal discovery.

WHEREFORE, Plaintiff prays for judgment against the United States of America in the total amount of $10,765.18 (or such greater amount to which Plaintiff may show himself entitled); for interest thereon, according to law; for his costs of court; for his attorneys' fees reasonably incurred in this matter; and for such other and further relief to which Plaintiff may show himself justly entitled.

Respectfully submitted,

By: ______________________

Date: September 3, 2008

G. Tomas Rhodus, Attorney of Record
Texas Bar No. 16824500

David C. Gair, *Of Counsel*
Texas Bar No. 24059792

Looper, Reed & McGraw, P.C.
4100 Thanksgiving Tower, 1601 Elm Street
Dallas, Texas 75201
Telephone No. (214) 954-4135
Telecopy No. (214) 953-1332

ATTORNEYS FOR PLAINTIFF

B120879

75225 IRS USE ONLY SB W 18221-166-75711-8 0 0 200826 CP: 4

Department of the Treasury
Internal Revenue Service
P.O. Box 249
Memphis, TN 38101-0249

For assistance, call:
1-800-829-8374
**Your Caller ID:** 198024

**Notice Number:** CP49
**Date:** July 7, 2008

**Taxpayer Identification Number:**
6068
**Tax Form:** 1040
**Tax Year:** December 31, 2007

108874.513079.0460.010 1 AT 0.346 695

SCOTT A JACKSON
3215 HANOVER ST
DALLAS TX 75225-7640156

108874

For account of: SCOTT A & BLAYN B JACKSON

## Overpaid Tax Applied to Other Taxes You Owe

We applied $4,147.18 of the overpaid tax on your 2007 tax return to the unpaid balance of other federal taxes which our records show you owe.

Since we applied all of your overpayment to pay other taxes you owed, we can't apply the amount you requested to your 2008 Estimated Tax. Therefore, you may need to adjust your Estimated Tax payments to avoid a penalty for underpayment.

You may still be due a refund if we applied only part of your overpayment to other taxes. You also may be due a refund if you recently made a payment against the other taxes that we had not credited when we applied your overpayment. In either case, you will receive a check for any refund due you as long as the amount is greater than one dollar. You must request a refund of less than one dollar. If you have any questions, please call us at the number listed above.

The figures below show our calculation:

### How We Applied Your Overpayment

| | |
|---|---|
| Amount of Overpaid Tax on Your Return | $4,114.00 |
| Amount of Interest You Earned on Overpayment | $33.18 |
| Total Amount Due You | $4,147.18 |
| Total Amount Applied | $4,147.18 |
| Amount You Will Receive as a Refund (any interest due you will be added) | $.00 |

### Where We Applied Your Overpayment

| Form(s) | Tax Period(s) | Amount(s) Applied |
|---|---|---|
| CVL | December 31, 2003 | $4,147.18 |
| PEN | | |

We wanted to ensure that both you and your spouse receive this notice, so we've sent a copy to each of you. Each copy contains the same information related to your joint account.

EXHIBIT
"A"

INTERNAL REVENUE SERVICE

JUL 29 2008

THIS IS NOT AN OFFICIAL RECEIPT

LooperReed & McGraw
ATTORNEYS

A Professional Corporation
4100 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
V 214.954.4135
F 214.953.1332
www.lrmlaw.com

DAVID C. GAIR
Direct Dial: (214) 237-6365
Email: dgair@lrmlaw.com

July 29, 2008

***Via Hand Delivery***

Internal Revenue Service
Taxpayer Assistance Center
1100 Commerce Street
Dallas, TX 75242

| | | |
|---|---|---|
| ***Re:*** | **TAXPAYER:** | **Scott A. Jackson** |
| | **SSN:** | **6068** |
| | **TYPE OF TAX:** | **Civil Penalty (TFRP)** |
| | **TAXABLE PERIOD:** | **1st Quarter of 2004** |

**DESIGNATED PAYMENT**

Dear Sir/Madam:

Attached please find check number 9661, made payable to the U.S. Department of Treasury in the amount of $2,410.00, drawn on Bank of America. This amount represents the tax associated with G&H Manufacturing, Ltd.'s sale of one taxable unit for the referenced quarter. Please apply the above-referenced payment **only** to the Taxpayer's civil penalty liability for the above-referenced taxable period. **Do not** apply any amount of the above-referenced payment to any other tax, interest or penalties assessed against the Taxpayer for any other taxable period.

Enclosed please find Form 2848 authorizing the undersigned attorney to represent Taxpayer.

Please contact me as soon as possible at (214) 237-6365. Thank you.

Sincerely,

David C. Gair

DCG/sll
Enc.



EXHIBIT
"B"

SCOTT A. JACKSON
BLAYN B. JACKSON
3215 HANOVER ST.
DALLAS, TX 75225

9661

7.28.08
Date

32-2/1110 TX
38000

PAY to the order of US Department of Treasury $ 2,410.00

Two thousand four hundred ten and no/100 Dollars

Bank of America

ACH R/T 111000025

For 1/1/04 – 3/31/04 Period

Blayn Jackson

⑆111000025⑆ 000185843784⑈9661

COLONIAL CLASSIC

INTERNAL [illegible] SERVICE
[illegible]
DALLAS [illegible]

JUL 29 2008

PROOF OF [illegible] ONLY
THIS IS NOT AN [illegible] RECEIPT

SCOTT A. JACKSON
BLAYN B. JACKSON
3215 HANOVER ST
DALLAS, TX 75225

9662

7.28.08
Date

PAY to the order of US Department of Treasury $ 2,074.00

Two thousand seventy four dollars & no/100 Dollars

Bank of America

For 4/1/04 – 6/30/04 Period

Blayn Jackson

⑆111000025⑆ 000185843784⑈9662

Reed McGraw
ATTORNEYS

A Professional Corporation
4100 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
V 214.954.4135
F 214.953.1332
www.jrmlaw.com

*Via Hand Delivery*

Internal Revenue Service
Taxpayer Assistance Center
1100 Commerce Street
Dallas, TX 75242

| | | |
|---|---|---|
| ***Re:*** | **TAXPAYER:** | **Scott A. Jackson** |
| | **SSN:** | **6068** |
| | **TYPE OF TAX:** | **Civil Penalty (TFRP)** |
| | **TAXABLE PERIOD:** | **2nd Quarter of 2004** |

**DESIGNATED PAYMENT**

Dear Sir/Madam:

Attached please find check number 9662, made payable to the U.S. Department of Treasury in the amount of $2,074.00, drawn on Bank of America. This amount represents the tax associated with G&H Manufacturing, Ltd.'s sale of one taxable unit for the referenced quarter. Please apply the above-referenced payment **only** to the Taxpayer's civil penalty liability for the above-referenced taxable period. **Do not** apply any amount of the above-referenced payment to any other tax, interest or penalties assessed against the Taxpayer for any other taxable period.

Enclosed please find Form 2848 authorizing the undersigned attorney to represent Taxpayer.

Please contact me as soon as possible at (214) 237-6365. Thank you.

Sincerely,

David C. Gair

INTERNAL REVENUE SERVICE
W&I - FIELD ASSISTANCE
DALLAS, TX 75242
JUL 29 2008
RECEIVED
WITH REMITTANCE
44106

DCG/sll
Enc.



EXHIBIT
"C"

COTT A. CKSON
BLAYN B. CKSON
3215 HANOVE T.
DALLAS, TX 75

9663

7.28.08 Date

32-2/1110 TX

PAY to the order of U.S. Department of Treasury $2,134.00

Two thousand one hundred thirty four and no/100 Dollars

Bank of America

ACH R/T 111000025

For 1/1/05 - 3/31/05 Period

Blayn Jackson

⑆111000025⑆ 000185843784⑈9663

rReed
McGraw
ATTORNEYS

A Professional Corporation
4100 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
V 214.954.4135
F 214.953.1332
www.lrmlaw.com

*Via Hand Delivery*

Internal Revenue Service
Taxpayer Assistance Center
1100 Commerce Street
Dallas, TX 75242

| | | |
|---|---|---|
| *Re:* | **TAXPAYER:** | **Scott A. Jackson** |
| | **SSN:** | **6068** |
| | **TYPE OF TAX:** | **Civil Penalty (TFRP)** |
| | **TAXABLE PERIOD:** | **1st Quarter of 2005** |

**DESIGNATED PAYMENT**

Dear Sir/Madam:

Attached please find check number 9663, made payable to the U.S. Department of Treasury in the amount of $2,134.00, drawn on Bank of America. This amount represents the tax associated with G&H Manufacturing, Ltd.'s sale of one taxable unit for the referenced quarter. Please apply the above-referenced payment **only** to the Taxpayer's civil penalty liability for the above-referenced taxable period. **Do not** apply any amount of the above-referenced payment to any other tax, interest or penalties assessed against the Taxpayer for any other taxable period.

Enclosed please find Form 2848 authorizing the undersigned attorney to represent Taxpayer.

Please contact me as soon as possible at (214) 237-6365. Thank you.

Sincerely,

David C

INTERNAL REVENUE SERVICE
W&I - FIELD ASSISTANCE
DALLAS, TX 75242

JUL 29 2008

RECEIVED
WITH REMITTANCE
44106

DCG/sll
Enc.



EXHIBIT
"D"

LooperReed &McGraw
ATTORNEYS

A Professional Corporation
4100 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
V 214.954.4135
F 214.953.1332
www.lrmlaw.com

July 29, 2008

***Via Hand Delivery***

Internal Revenue Service
Attn: Margaret Glasgow
Technical Services Manager
1100 Commerce Street, MC 5028 DAL
Dallas, TX 75242

| | | |
|---|---|---|
| ***Re:*** | **TAXPAYER:** | **Scott A. Jackson** |
| | **SSN:** | **6068** |
| | **TYPE OF TAX:** | **Trust Fund Recovery Penalty** |
| | **TAXABLE PERIOD:** | **4th Quarter of 2003** |

**CLAIM FOR REFUND**

Dear Margaret:

Enclosed please find IRS Form 843, *Claim for Refund and Request for Abatement* for the above-referenced taxable period. The IRS applied an overpayment from taxable year 2007 to the civil penalty assessed for the 4th Quarter of 2003. This amount represents the tax associated with G&H Manufacturing, Ltd.'s sale of one taxable unit for the referenced quarter. A copy of this IRS notice is enclosed for ease of reference.

Also enclosed please find Form 2848 authorizing the undersigned attorney to represent Taxpayer.

Taxpayer respectfully requests that the processing of this claim for refund be done as soon as possible.

Please contact me with any questions. Thank you.

Sincerely,

David C. Gair



EXHIBIT
E

7/23/2008 12:51:26 PM Scott A. Jackson 459436068

Form **843** (Rev. February 2008) Department of the Treasury Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ **See separate instructions.**

OMB No. 1545-0024

Use Form 843 if your claim or request involves:
- (a) a refund of one of the taxes (other than income taxes) shown on line 3,
- (b) an abatement of employment or certain excise taxes, or
- (c) a refund or abatement of interest, penalties, or additions to tax for one of the reasons shown on line 5a.

**Do not** use Form 843 if your claim or request involves:
- (a) an overpayment of income taxes (use the appropriate amended income tax return),
- (b) a refund of excise taxes based on the nontaxable use or sale of fuels, or
- (c) an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

Name(s): Scott A. Jackson
Your social security number: 6068
Address (number, street, and room or suite no.): 3215 Hanover Street
Spouse's social security number:
City or town, state, and ZIP code: Dallas, Texas 75225
Employer identification number (EIN):
Name and address shown on return if different from above: G&H Manufacturing, Ltd., 1015 Commercial Blvd., South Arlington, TX 76001-7125
Daytime telephone number:

1 **Period.** Prepare a separate Form 843 for each tax period
From 10/01/2003 to 12/31/2003

2 **Amount** to be refunded or abated $ 4,147.

3 **Type of tax.** Indicate the type of tax to be refunded or abated or to which the interest, penalty, or addition to tax is related.
☐ Employment ☐ Estate ☐ Gift ☒ Excise (see instructions) ☐ Income

4 **Type of penalty.** If the claim or request involves a penalty, enter the Internal Revenue Code section on which the penalty is based (see instructions). IRC section: 6672

5a **Interest, penalties, and additions to tax.** Check the box that indicates your reason for the request for refund or abatement. (If none apply, go to line 6.)
☐ Interest was assessed as a result of IRS errors or delays.
☐ A penalty or addition to tax was the result of erroneous written advice from the IRS.
☐ Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax.

b Dates of payment ▶

6 **Original return.** Indicate the type of return filed to which the tax, interest, penalty, or addition to tax relates.
☐ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945
☐ 990-PF ☐ 1040 ☐ 1120 ☐ 4720 ☒ Other (specify) ▶ 720

7 **Explanation.** Explain why you believe this claim or request should be allowed and show the computation of the amount shown on line 2. If you need more space, attach additional sheets.
See Exhibit "A" attached hereto.

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the officer's title must be shown.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

[signature] Date: 28 July 08
Signature (Title, if applicable. Claims by corporations must be signed by an officer.)

[signature] Date: 28 July 08
Signature (spouse, if joint return)

**Paid Preparer's Use Only**
Preparer's signature ▶ [signature] Date: 7/29/08 Check if self-employed ☐ Preparer's SSN or PTIN: XXX-XX-0481
Firm's name (or yours if self-employed), address, and ZIP code ▶ 1601 Elm St, Suite 4100, Dallas, TX 75201
EIN: 76-0152805
Phone no. 214-954-4135

BKA **For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.** Form **843** (Rev. 02-2008)

# EXHIBIT A

## ATTACHMENT TO IRS FORM 843

| | |
|---|---|
| **TAXPAYER:** | **Scott A. Jackson** |
| **SSN:** | **6068** |
| **TYPE OF TAX:** | **Trust Fund Recovery Penalty** |
| **TAXABLE PERIOD:** | **4th Quarter of 2003** |

The IRS issued Mr. Jackson its Proposed Assessment of the Trust Fund Recovery Penalty (IRS Letter 1153(DO)) dated April 4, 2007 (a copy of which is attached hereto Exhibit B. Mr. Jackson filed his protest (the "Protest") to the proposed assessment on June 4, 2007 (a copy of which is attached hereto as Exhibit C. The Protest, which is fully incorporated herein, discusses generally, the factual and legal bases which demonstrate why the IRS's proposed assessment was in error.

The IRS appeared determined to find against Mr. Jackson, avoiding controlling Supreme Court precedent. The IRS issued its final determination on May 15, 2008 (a copy of which is attached hereto as Exhibit D).

On June 3, 2008, the IRS assessed the Trust Fund Recovery Penalty ("TFRP") against Mr. Jackson. Mr. Jackson was also assessed the TFRP for other periods, including the above-referenced, as follows:

| Taxable Period | Assessment |
|---|---|
| 4Q: 2003 | $60,650.79 |
| 1Q: 2004 | $108,356.38 |
| 2Q: 2004 | $111,906.30 |
| 1Q: 2005 | $32,478.49 |
| **TOTAL** | **$313,391.96** |

The TFRP assessments for the 4th Quarter of 2003, the 1st Quarter of 2004, the 2nd Quarter of 2004 and the 1st Quarter are collectively referred to herein as the "Assessments."

The underlying liabilities for the TFRP Assessments involve excise taxes (IRS Form 720). The corporate entity that incurred the liabilities is:

G&H Manufacturing, Ltd.
1015 Commercial Blvd.
South Arlington, Texas
76001-7125
EIN: 75-2751384

## Central Claim – Statutory TFRP Elements Not Satisfied

The Assessments made against Mr. Jackson are erroneous; liability for the TFRP under IRC § 6672 requires that Mr. Jackson be both a "responsible person" and "willful." Mr. Jackson is neither responsible (he never had the requisite status, duty nor the authority over the financial decision-making of G&H) nor did he willfully fail to collect, truthfully account for, and pay over "trust fund" taxes to the IRS for the periods at issue.

## Additional Claims

1) Mr. Jackson hereby further asserts that the Assessments are barred by the applicable statutes of limitation.
2) Mr. Jackson hereby makes a claim for administrative costs and litigation costs incurred in connection with the Assessments, under IRC § 7430 and as otherwise permitted by law.
3) Mr. Jackson further reserves the right to assert any additional claims which demonstrate that he is not liable for the Assessments as may be discovered administratively or through formal discovery.

**Internal Revenue Service**

**Department of the Treasury**

C

**Date:** April 4, 2007

Scott A Jackson
3215 Hanover St
Dallas, Tx. 75225

**Number of this letter:** 1153 (DO)

**Person to Contact:**
Mr. Larry King
**Employee Identification Number:**
75-11886
**IRS Contact Address:**
2601 Meacham Blvd. Ste 550
MC:5401NFTW
Fort Worth, Texas 76137
**IRS Telephone Number:**
817-759-2900 ext 6145
**Employer Identification Number**
75-2751384
**Business Name and Address:**
G & H Manufacturing Ltd
1015 Commercial Blvd S
Arlington, TX 76001-7125

Dear Sir:

Our efforts to collect the federal employment or excise taxes due from the business named above have not resulted in full payment of the liability. We therefore propose to assess a penalty against you as a person required to collect, account for, and pay over withheld taxes for the above business.

Under the provisions of Internal Revenue Code Section 6672, individuals who were required to collect, account for, and pay over these taxes for the business may be personally liable for a penalty if the business doesn't pay the taxes. These taxes, described in the enclosed Form 2751, consist of employment taxes you withheld (or should have withheld) from the employees' wages (and didn't pay) or **excise taxes** you collected (or should have collected) from patrons (and didn't pay), and are commonly referred to as "trust fund taxes".

The penalty we propose to assess against you is a personal liability called the Trust Fund Recovery Penalty. It is equal to the unpaid trust fund taxes which the business still owes the government. If you agree with this penalty for each period shown, please sign Part 1 of the enclosed Form 2751 and return it to us in the enclosed envelope.

If you don't agree, have additional information to support your case, and wish to try to resolve the matter informally, contact the person named at the top of this letter within ten days from the date of this letter.

You also have the right to appeal or protest this action. To preserve your appeal rights you need to mail us your written appeal within 60 days from the date of this letter (75 days if this letter is addressed to you outside the United States). The instructions below explain how to make the request.

EXHIBIT
B

APPEALS

You may appeal your case to the local Appeals Office. Send your written appeal to the attention of the Person to Contact at the address shown at the top of this letter. The dollar amount of the proposed liability for each specific tax period you are protesting affects the form your appeal should take.

| For each period you are protesting, if the proposed penalty amount is: | You should: |
|---|---|
| $25,000 or less | Send a letter listing the issues you disagree with and explain why you disagree. (Small Case Request). |
| Over $25,000 | Submit a formal Written Protest. |

One protest will suffice for all the periods listed on the enclosed Form 2751, however if any one of those periods is more than $25,000, a formal protest must be filed. Include any additional information that you want the Settlement Officer/Appeals Officer to consider. You may still appeal without additional information, but including it at this stage will help us to process your request promptly.

**A SMALL CASE REQUEST** should include:

1. A copy of this letter, or your name, address, social security number, and any information that will help us locate your file;

2. A statement that you want an Appeal's conference;

3. A list of the issues you disagree with and an explanation of why you disagree. Usually, penalty cases like this one involve issues of responsibility and willfulness. Willfulness means that an action was intentional, deliberate or voluntary and not an accident or mistake. Therefore, your statement should include a clear explanation of your duties and responsibilities; and specifically, your duty and authority to collect, account for, and pay the trust fund taxes. Should you disagree with how we calculated the penalty, your statement should identify the dates and amounts of payments that you believe we didn't consider and or/any computation errors that you believe we made.

Please submit two copies of your Small Case Request.

A formal **WRITTEN PROTEST should** include the items below. Pay particular attention to item 6 and the note that follows it.

1. Your name, address, and social security number;

2. A statement that you want a conference;

3. A copy of this letter, or the date and number of this letter;

4. The tax periods involved (see Form 2751);

5. A list of the findings you disagree with;

6. A statement of fact, signed under penalties of perjury, that explains why you disagree and why you believe you shouldn't be charged the penalty. Include specific dates, names, amounts, and locations which support your position. Usually, penalty cases like this one involve issues of responsibility and willfulness. Willfulness means that an action was intentional, deliberate or voluntary and not an accident or mistake. Therefore, your statement should include a clear explanation of your duties and responsibilities; specifically, your duty and authority to collect, account for, and pay the trust fund taxes. Should you disagree with how we calculated the penalty, your statement should identify the dates and amounts of payments that you believe we didn't consider and or/any computation errors that you believe we made;

   **NOTE:**

   To declare that the statement in item 6 is true under penalties of perjury, you must add the following to your statement and sign it:

   > "Under penalties of perjury, I declare that I have examined the facts presented in this statement and any accompanying information, and, to the best of my knowledge and belief, they are true, correct, and complete."

7. If you rely on a law or other authority to support your arguments, explain what it is and how it applies.

**REPRESENTATION**

You may represent yourself at your conference or have someone who is qualified to practice before the Internal Revenue Service represent you. This may be your attorney, a certified public accountant, or another individual enrolled to practice before the IRS. If your representative attends a conference without you, he or she must file a power of attorney or tax information authorization before receiving or inspecting confidential tax information. Form **2848**, Power of Attorney and Declaration of Representative, or Form **8821**, Tax Information Authorization, may be used for this purpose. Both forms are available from any IRS office. A properly written power of attorney or authorization is also acceptable.

If your representatives prepares and signs the protest for you, he or she must substitute a declaration stating:

1. That he or she submitted the protest and accompanying documents, and

2. Whether he or she know personally that the facts stated in the protest and accompanying documents are true and correct.

## CLAIMS FOR REFUND AND CONSIDERATION BY THE COURTS

### CONSIDERATION BY THE COURTS

If you and the IRS still disagree after your conference, we will send you a bill. However, by following the procedures outlined below, you may take your case to the United States Court of Federal Claims or to your United States District Court. These courts have no connection with the IRS.

Before you can file a claim with these courts, you must pay a portion of the liability and file a claim for refund with the IRS, as described below.

### SPECIAL BOND TO DELAY IRS COLLECTION ACTIONS FOR ANY PERIOD AS SOON AS A CLAIM FOR REFUND IS FILED

To request a delay in collection of the penalty by the IRS for any period as soon as you file a claim for refund for that period, you must do the following within 30 days of the date of the official notice of assessment and demand (the first bill) for that period:

1. Pay the tax for one employee for each period (quarter) of liability that you wish to contest, if we've based the amount of the penalty on unpaid employment taxes; or pay the tax for one transaction for each period that you wish to contest, if we've based the amount of the penalty on unpaid excise taxes.

2. File a claim for a refund of the amount(s) you paid, using Form **843**, Claim for Refund and Request for Abatement.

3. Post a bond with the IRS for one and one half times the amount of the penalty that is left after you have made payment in Item 1.

If the IRS denies your claim when you have posted this bond, you then have 30 days to file suit in your United States District Court or the United States Court of Federal Claims before the IRS may apply the bond to your trust fund recovery penalty and the interest accruing on this debt.

**CLAIM FOR REFUND WITH NO SPECIAL BOND**

If you do not file a special bond with a prompt claim for refund, as described above, you may still file a claim for refund following above action items 1 and 2, except these action items do not have to be taken in the first 30 days after the date of the official notice of assessment and demand for the period.

If IRS has not acted on your claim within 6 months from the date you filed it, you can file a suit for refund. You can also file a suit for refund within 2 years after IRS has disallowed your claim.

You should be aware that, if IRS finds that the collection of this penalty is in jeopardy, we may take immediate action to collect it without regard to the 60-day period for submitting a protest mentioned above.

For further information about filing a suit you may contact the Clerk of your District Court or the Clerk of the United States Court of Federal Claims, 717 Madison Place, NW., Washington, DC 20005.

If we do not hear from you within 60 days from the date of this letter (or 75 days, if this letter is addressed to you outside the United States), we will assess the penalty and begin collection action.

Sincerely yours,

Larry King

Larry King
Revenue Officer

Enclosures:
Form 2751
Publication 1
Envelope

3

Form **2751**
(Rev. 7-2002)

Department of the Treasury – Internal Revenue Service

# Proposed Assessment of Trust Fund Recovery Penalty

*(Sec. 6672, Internal Revenue Code, or corresponding provisions of prior internal revenue laws)*

## Report of Business Taxpayer's Unpaid Tax Liability

Name and address of business
G & H Manufacturing Ltd
1015 Commercial Blvd S
Arlington, TX 76001-7125

| Tax Return Form Number | Tax Period Ended | Date Return Filed | Date Tax Assessed | Identifying Number | Amount Outstanding | Penalty |
|---|---|---|---|---|---|---|
| 720 | 12/31/2003 | 10/04/2004 | 12/27/2004 | 75-2751384 | $60,650.79 | $60,650.79 |
| 720 | 03/31/2004 | 10/04/2004 | 12/27/2004 | 75-2751384 | $108,356.38 | $108,356.38 |
| 720 | 06/30/2004 | 10/04/2004 | 12/27/2004 | 75-2751384 | $111,906.30 | $111,906.30 |
| 720 | 03/31/2005 | 08/19/2005 | 09/26/2005 | 75-2751384 | $32,478.49 | $32,478.49 |
| 720 | 06/30/2005 | 08/19/2005 | 09/26/2005 | 75-2751384 | $16,854.36 | $16,854.36 |

## Agreement to Assessment and Collection of Trust Fund Recovery Penalty

Name, address, and social security number of person responsible
Scott A. Jackson, 3215 Hanover St, Dallas, Tx. 75225 ssn -6068

I consent to the assessment and collection of the penalty shown for each period, which is equal either to the amount of federal employment taxes withheld from employees' wages or to the amount of federal excise taxes collected from patrons or members, and which was not paid over to the Government by the business named above. I waive the 60-day restriction on notice and demand set forth in Internal Revenue Code Section 6672(b).

Signature of person responsible

Date

**Part 1** - Please sign and return this copy to Internal Revenue Service

Catalog No. 21955U

Form **2751** (Rev. 7-2002)

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com
OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here — LOVERS LN FINANCE STA. DALLAS TX 75206 USPS JUN 4 2007

7004 2890 0000 7840 6814

Sent To: Mr. Larry King Internal Revenue Servi...
Street, Apt. No.; or PO Box No. 2601 Meacham Blvd., Suite 550
City, State, ZIP+4 MC: 5401 NFTW Fort Worth, TX

SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3. Also comp... item 4 if Restricted Delivery is desired.
- Print your name and address on the rev... so that we can return the card to you.
- Attach this card to the back of the mail... n the front if space permits.

...cle Addressed to: Larry King ...al Revenue Service ... Meacham Blvd., Suite ... 5401NFTW ... Worth, TX 76137

...le Number (...nsfer from service label)
...n 3811, February 2004

**Howard & Co., L**
8350 Meadow Road, S
Dallas, Texas 752

Direct Dial: (214) 346-0755
E-mail: jim.howard@jhcpa.com
Fax: (214) 346-0784

June 4, 2007

***VIA FACSIMILE TO (817) 759-2923***

***and***

***VIA CERTIFIED MAIL***

Mr. Larry King
Internal Revenue Service
2601 Meacham Blvd., Suite 550
MC: 5401NFTW
Fort Worth, Texas 76137

Re: Scott A. Jackson ( -6068)
Excise Tax and Responsible Person Penalties for Tax Years 2003, 2004, and 2005
Protest Letter

Dear Mr. King:

This letter is filed in protest of your letter dated April 4, 2007 and the adjustments reflected in the forms enclosed therewith (collectively, the "Agent's Report" prepared by the "Agent") issued to Scott A. Jackson (the "Taxpayer"). We submit this protest on behalf of the Taxpayer. We have previously provided you with powers of attorney.

The following information is provided in accordance with the requirements contained in IRS Publication No. 5:

1. **__Taxpayers' Names, Address, Telephone Number, and Identification Numbers:__**

| | |
|---|---|
| Names: | Scott A. Jackson |
| Address: | 3215 Hanover Street<br>Dallas, Texas 75225-7640 |
| Telephone Number: | (214) 668-0981 |

EXHIBIT
C

Social Security Number of Scott A. Jackson: 6068

2. **Request for Appeal:**

We request an appeal of all of the proposed assessments of trust fund recovery penalties in Form 2751 of the Agent's Letter.

3. **Date and Number of the Agent's Letter:**

Date: April 4, 2007
Number: 1153 (DO)

4. **Tax Periods Involved:**

- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended December 31, 2003
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended March 31, 2004
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended June 30, 2004
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended March 31, 2005
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended June 30, 2005

5. **List of Changes that Taxpayer Disputes:**

The Taxpayer disputes all of the proposed assessments of trust fund recovery penalties in Form 2751 of the Agent's Letter. Specifically, the Taxpayer disputes the proposed assessments of trust fund recovery penalties in Form 2751 of the Agent's Letter from

- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended December 31, 2003 of $60,650.79
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended March 31, 2004 of $108,356.38
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended June 30, 2004 of $111,906.30
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended March 31, 2005 of $32,478.49
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended June 30, 2005 of $16,854.36,

for the reasons set forth in detail below. The proposed assessments are based on the

Agent's determination that the Taxpayer was a responsible person in the context of the person's authority over company finances or general decision making who willfully failed to collect, account for, and pay over the required taxes and that as a responsible person, Taxpayer willfully chose to pay creditors instead of satisfying a delinquency that existed for unpaid excise taxes to the U.S. Treasury.

6. **Reasons Taxpayer Disputes the Service's Adjustments:**

Following is a statement of the relevant facts and the law and authority on which the Taxpayer relies.

## STATEMENT OF FACTS

Taxpayer worked for G & H MANUFACTURING, LTD., a Texas limited partnership (the "Partnership") located at 1015 Commercial Boulevard S, Arlington, Texas 76001-7125, from September 2004 to March 2005. In his roles as Vice President and Chief Financial Officer, Taxpayer determined financial policy for the business, directed or authorized payments of bills, opened or closed bank accounts for the business, signed or countersigned checks, and authorized or made federal tax deposits. After terminating the Taxpayer's employment, the Partnership eventually filed bankruptcy and is no longer operating.

Although Taxpayer worked as a consultant on refinancing the Partnership's debts from February 2004 to July 2004, he first learned of the Partnership's delinquent excise taxes when he received an invitation to work as Chief Financial Officer for the Partnership in July 2004. In August or September 2004, Taxpayer hired a Controller for the Partnership who discovered that excise tax returns had not been filed and that tax deposits were due and needed to be paid. The Controller arranged to file the current excise tax returns electronically. Thereafter, the Controller prepared the current returns and during Taxpayer's employment, Taxpayer reviewed and paid all current excise taxes.

As part of the refinancing of the Partnership's debts, a portion of the proceeds were initially earmarked to pay delinquent excise taxes. The Controller discovered large accounting discrepancies when merging two accounting systems in order to streamline the Partnership's bookkeeping and was faced with roughly $2.5 million of previously unrecorded accounts payable, which sabotaged the refinancing and caused continued liquidity issues. There was considerable debate and finger pointing over the $2.5 million of previously unrecorded accounts payable. The investors who were part of the recapitalization of the Partnership argued that their investment should be used to run the business going forward, not to provide relief of delinquent excise taxes to the management and owners of the Partnership, particularly in light of their failure to disclose the extent of their accounting problems.

During March 2005, Taxpayer was discharged from employment and was no longer in a position to remit the excise taxes or file the required quarterly tax returns.

## THE SERVICE'S POSITION

The Service contends that (i) Taxpayer is a responsible person (ii) who willfully failed to collect, account for, and pay over the required taxes.

According to the Agent's Report[1], Taxpayer was VP and CFO of G & H MANUFACTURING, LTD. from July 2004 to March 2005. In those roles, Taxpayer was responsible for determining the financial policy for the business, directing or authorizing payments of bills, opening or closing bank accounts for the business, signing or countersigning checks, authorizing or making federal tax deposits. The Service contends that as a responsible person, Taxpayer functioned as a trustee to collect and remit excise taxes from G & H MANUFACTURING, LTD.'s customers to the U.S. Treasury. There is no dispute that G & H MANUFACTURING, LTD. fulfilled its obligations to collect and remit excise tax to the U.S. Treasury from July 1, 2004 to December 31, 2004.

The Service contends that Taxpayer is liable for excise taxes that should have been collected and remitted before he became a responsible person of G & H MANUFACTURING, LTD. The Service bases its theory on the availability of $600,000 of capital in July 2004, which was earmarked in order of preference: (i) for paying off Comerica, (ii) for cleaning up past due receivables, (iii) for paying accrued excise taxes, and (iv) for paying Taxpayer's fees and expenses.

The Service does not explain why Taxpayer is liable for tax period ended March 31, 2005 or tax period ended June 30, 2005, when Taxpayer was no longer a responsible person having been terminated as the Partnership's CFO.

## TAXPAYER'S POSITION

The Taxpayer contends that Taxpayer was not a responsible person of G & H MANUFACTURING, LTD. during the discussed tax periods.

There is no dispute that G & H MANUFACTURING, LTD. fulfilled its obligations to collect and remit excise tax to the U.S. Treasury from July 1, 2004 to December 31, 2004. The Taxpayer is not liable for excise taxes that should have been collected and remitted before he became a responsible person of G & H MANUFACTURING, LTD.

The Taxpayer denies liability for the tax period ended March 31, 2005 and the tax period ended June 30, 2005, when Taxpayer was no longer a responsible person having been terminated as the Partnership's CFO.

---

[1] Form 4180 Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Taxes dated April 4, 2007.

## STATEMENT OF LAW AND AUTHORITIES

*Identifying a Responsible Person*

There is no dispute that Taxpayer was a responsible person who fulfilled his obligations to collect and remit excise tax to the U.S. Treasury from July 1, 2004 to December 31, 2004, however, as the court in *Vinick v. Comr.*,[2] stated, "[r]esponsibility during one period does not equate to responsibility in all periods." The court explained that the trial court's inquiry was flawed as a matter of law because it failed to concentrate on the taxpayer's authority during the tax quarters at issue.

*Knowledge of Trust Fund Tax Liability*

Responsibility is a matter of status, duty, and authority - but not knowledge.[3] The mere knowledge that trust fund taxes are not being paid over to the government, while relevant to the issue of willfulness, cannot alone cause responsibility under IRC § 6672. Thus, in *U.S. v. Burger*,[4] a minority shareholder who was aware of the corporation's failure to pay over trust fund taxes to the government, but did not possess any authority over the corporation's financial affairs, was not a responsible person under IRC § 6672. Conversely, the lack of knowledge that trust fund taxes are not being paid does not preclude a finding of responsibility.[5]

Separating knowledge from responsibility is generally more difficult than this simple analysis indicates. Once these individuals are imbued with knowledge of a tax delinquency, and given their position of authority in the corporation, many courts would presumably find some of these same individuals responsible for future delinquencies if they did nothing to address or investigate the problem.[6] For instance, controlling shareholders can remove directors, and directors can remove officers who are not carrying out the tax obligations of the corporation. Similarly, shareholders/directors/officers can at a minimum direct those under their control to comply with the tax law and report their progress.

---

[2] 205 F.3d 1 (1st Cir. 2000), nonacq. on other grounds, 2001-9 I.R.B. *See also Moulton v. U.S.*, 2004-1 USTC ¶50,134 (D. Mass. 2003).

[3] *Davis v. U.S.*, 961 F.2d 867 (9th Cir. 1992); *Thibodeau v. U.S.*, 828 F.2d 1499, 1503 (11th Cir. 1987); *Wood v. U.S.*, 808 F.2d 411, 415 (5th Cir. 1987); *Pototzky v. U.S.*, 85-1 USTC ¶9438 (Cl. Ct. 1985).

[4] 717 F. Supp. 245 (S.D.N.Y. 1989). *See In re Dallas*, 93-1 USTC ¶50,163 (Bankr. S.D. Ala. 1992) (although members of family business had knowledge of the nonpayment of trust fund taxes, they lacked sufficient authority to be classified as responsible persons), *rev'd on other grounds*, 93-1 USTC ¶50,352 (S.D. Ala. 1993).

[5] *Mazo v. U.S.*, 591 F.2d 1151 (5th Cir. 1979), cert. denied sub nom., *Lattimore v. U.S.*, 444 U.S. 842 (1979); *Kalb v. U.S.*, 505 F.2d 506 (2d Cir. 1974).

[6] *Keller v. U.S.*, 93-2 USTC ¶50,551 (D.N.D. 1993), aff'd, 46 F.3d 851 (8th Cir. 1995) (personal representative of estate is liable for trust fund taxes even though not involved in daily operations of estate's business; court focused on fact that he was ultimate decision maker and that he had knowledge of earlier mismanagement and nonpayment of taxes); *Wetzel v. U.S.*, 92-1 USTC ¶50,217 (S.D. Miss. 1992); *In re Premo*, 116 Bankr. 515 (Bankr. E.D. Mich. 1990).

*Determining Willfulness*

In *Slodov v. U.S.*,[7] the Supreme Court considered the scope of liability of an individual becoming a responsible person for the first time after withholding tax liability has accrued and the trust funds have been dissipated. It held that funds collected by the corporation after a change in corporate control are not impressed with a trust for taxes withheld during a prior regime unless those funds are directly traceable to dissipated trust funds; failure to use such later acquired funds to pay federal withholding taxes does not constitute a violation of the IRC § 6672 requirement that the responsible person "pay over" withholding taxes.[8]

Petitioner in *Slodov* assumed control of three corporations at a time when a delinquency existed for unpaid federal taxes withheld from employees' wages, while the specific funds withheld but not paid had been dissipated by predecessor officers and when the corporations had no liquid assets with which to pay the overdue taxes. During the six-month period of petitioner's control the corporations acquired funds sufficient to pay the taxes, but petitioner used the funds to pay employees' wages, rent, suppliers and other creditors, and to meet current business expenses. On petitioner's withdrawal from the corporations' business, he instituted a bankruptcy proceeding, in which the Service filed a claim, including the delinquent back taxes, under IRC § 6672, which imposes personal liability for taxes on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof ...." The Court of Appeals held that petitioner was personally liable for the unpaid taxes under §6672. While petitioner conceded liability for the collection, accounting, and payment of taxes required to be withheld during the period of his control, he disclaimed responsibility with respect to taxes withheld prior thereto, arguing that its conjunctive phrasing made IRC § 6672 inapplicable to him since he was clearly under no duty to collect and account for taxes incurred before that period.

The Service maintained that the statutory language could be construed as describing in terms of their general responsibilities the persons potentially liable under the statute without regard to the fulfillment of all the duties with respect to specific tax dollars, and that IRC § 6672 imposed liability on petitioner as a "responsible person" because sums received during the period of his control were impressed with a trust in favor of the U.S. Treasury for the satisfaction of the overdue taxes and petitioner's willful use of such sums to pay other creditors violated the statute's "pay over" obligation. Though relying primarily on IRC § 6672 for its trust theory of liability, the Service suggested as also applicable IRC § 7501, which provides that "[w]henever a person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of the tax ... shall be held to be a special fund in trust for the United States [which] shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

---

[7] *Slodov v. U.S.*, 1978, 436 U.S. 238 [42 AFTR 2d 78-5011], (98 S. Ct. 1778), 56 L.Ed.2d 251.
[8] *See* 436 U.S. at 258, 98 S. Ct. at 1791, 56 L.Ed. at 269.

The Supreme Court held:

"1. The phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit IRC § 6672 to persons responsible for paying over taxes that require collection (third-party taxes) and not to limit it to persons in a position to perform all three functions with respect to the specific taxes as to which the employer is delinquent. Petitioner's construction could have led to ready evasion of responsibility under IRC § 6672, and was thus at odds with the statute's purpose of assuring payment by third parties of withheld taxes.

2. Neither IRC § 6672, nor § 7501 impresses a trust on the after-acquired funds of an employer for payment of overdue withholding taxes absent tracing of those funds to taxes collected, and petitioner therefore was not liable under § 6672 for using those funds for purposes other than payment of the overdue withholding taxes.

(a) Section 6672 was not intended to impose an absolute liability without personal fault for failure to "pay over" amounts that should have been collected and paid over so that petitioner could not be liable unless he failed to pay funds held in trust for the United States.

(b) Nothing in the language or legislative history of § 6672 suggests that the effect of the "pay over" requirement was to impress a trust on the corporations' after-acquired cash, and the history of § 7501 makes clear that it was not. Since the very reason for adding § 7501 to the Code was that under existing law the liability of the person collecting and withholding the taxes was merely a debt, § 6672, whose predecessor was enacted while the debt concept of liability prevailed, hardly could have been intended to impose a trust on after-acquired cash. Although the trust concept of § 7501 may form the scope of the duty imposed by § 6672, the language of § 7501 makes clear that there must be a nexus between the funds collected and the trust created.

(c) A construction of IRC §§ 7501 and 6672 as imposing a trust on all after-acquired property without regard to the interests of others in those funds would conflict with the priority rules applicable to the collection of back taxes, which give secured parties interests in certain proceeds superior to tax liens."

## CONCLUSION

Taxpayer was a responsible person for G & H MANUFACTURING, LTD. from July 2004 to mid-March 2005, but not during the periods that the Service is trying to recover excise tax.

*Slodov*, supra, firmly supports Taxpayer's decision to allocate available capital to creditors and away from the U.S. Treasury when the excise taxes were due and unpaid before Taxpayer was a responsible party. Neither IRC § 6672, nor § 7501, impresses a trust on the after-acquired funds of an employer for payment of overdue excise taxes absent tracing of those funds to taxes collected, and Taxpayer therefore was not liable under § 6672 for using those funds for purposes other than payment of the overdue excise taxes.

The Supreme Court in *Slodov*,[9] addresses the public policy reason for denying the liability that the Service proposes to bring against Taxpayer. The Service argued that its construction of the statute is necessary to effectuate the congressional purpose to assure collection and payment of taxes. Although that construction might in this case garner tax dollars otherwise uncollectible, its long-term effect arguably would more likely frustrate than aid the IRS' collection efforts.

As in *Slodov*, at the time the Taxpayer assumed control, G & H MANUFACTURING, LTD. owed back taxes, was overdue on its supplier accounts, and had no cash. To the extent that G & H MANUFACTURING, LTD. had assets unencumbered by liens superior to a tax lien, the Service could have satisfied its claim by levy and sale. But, G & H MANUFACTURING, LTD. did not have such assets. The Service argued in *Slodov*, that in such circumstances, its practice is to be "flexible," and not insist on the discontinuation of operations, thereby substituting for certain loss at least the potential of recovering back taxes if the business makes a financial recovery. The Service argued unsuccessfully for the best of both worlds, that it can avoid a certain loss and nevertheless hold the "responsible person" personally liable to the § 6672 penalty when the Taxpayer uses gross receipts to purchase inventory, or pay wages, or even by using personal funds for those purposes so long as any third-party tax bill remains unpaid.

The Supreme Court recognized the probability of abuse when it is in the Service's interest to encourage the responsible person to continue operation with the hope of receiving payment of the back taxes, and if the attempt fails and the taxes remain unpaid, the Service can simply insist that the § 6672 personal liability penalty attached upon payment of the first dollar to a supplier. The practical effect of that construction of the statute would be that a well-counseled person contemplating assuming control of a financially beleaguered business, such as G & H MANUFACTURING, LTD., owing back excise taxes would recognize that he could do so without incurring personal civil and criminal penalties only if there were available sufficient borrowed or personal funds fully to pay all back excise taxes before doing any business. If that course is unattractive or unavailable to the entity, the Service would be remitted to its claim in bankruptcy.

When an immediate filing for bankruptcy means a total loss, the Service understandably, as it did here, does not discourage the entity from continuing to operate so long as current taxes are paid. As soon as the entity embarked upon that course, however, the "responsible person" is potentially liable to heavy civil and criminal penalties not for doing anything, which compromised the Service's collection efforts, but for doing what the Service regards as maximizing its chances for recovery. As construed by the Service, § 6672 would merely discourage changes of ownership and management of financially troubled businesses and the infusion of equity or debt funding which might accompany it without encouraging employer compliance with tax obligations or facilitating collection of back taxes. Thus, recovery of excise taxes would likely be limited to the situation in which the prospective purchaser or management official is ignorant of § 6672.

[9] *Id.* at 75-5018.

The actions of the Service and its Agent Larry King in this matter are overreaching and abusive. The fact that there is a U.S. Supreme Court case that is directly on point was discussed with Mr. King, who repeatedly suggested that Taxpayer file a written protest letter and take the matter up with the Appeals Office instead of seeking to resolve the issues the Taxpayer's representative brought up, thus requiring the Taxpayer to incur the cost of preparing this written protest letter. Repeated requests to correct the Agent's Report for known and undisputed facts were ignored. Notice is herewith given, that Taxpayer, if successful, will seek reimbursement from the Service for all costs (accountants, attorneys, and other) required addressing this abuse of power.

* * *

Under penalties of perjury, I declare that I have prepared and am submitting this protest and, although I do not have personal knowledge that the facts contained in this protest are true and correct, I ascertained them from sources I believe to be reliable and, accordingly, believe them to be true and correct.

James N. Howard, CPA
James N. Howard, CPA
Howard & Co., LLP

Enclosure:
*Slodov v. U.S.*, 1978, 436 U.S. 238 [42 AFTR 2d 78-5011], (98 S. Ct. 1778), 56 L.Ed.2d 251.

cc: Mr. Scott A. Jackson
(*w/o encl.*)

American Federal Tax Reports

# SLODOV v. U.S., Cite as 42 AFTR 2d 78-5011 (98 S. Ct. 1778), 05/22/1978

Ike SLODOV, PETITIONER v. U.S., RESPONDENT.

## Case Information:

| | |
|---|---|
| **Code Sec(s):** | |
| **Court Name:** | U.S. Supreme Court, |
| **Docket No.:** | No. 76-1835, |
| **Date Decided:** | 05/22/1978 |
| **Prior History:** | Reversing Court of Appeals, 39 AFTR 2d 77-1423 ( 552 F.2d 159), which reversed District Court, 36 AFTR 2d 75-6044, which affirmed in part and reversed in part Bankruptcy Court, 34 AFTR 2d 74-5772. |
| **Tax Year(s):** | Years 1968, 1969. |
| **Disposition:** | Decision for taxpayer. |
| **Cites:** | 42 AFTR 2d 78-5011, 436 US 238, 98 S Ct 1778, 56 L Ed 2d 251, 78-1 USTC P 9447. |

## HEADNOTE

1. **ADDITIONS TO TAX AND PENALTIES—100% penalty—failure to collect or pay over tax—factors of determination—duties and authorities of parties involved.** Appellate Court decision imposing liability on orthodontist for unpaid withholding taxes of bankrupt food vending corp. reversed. Taxes were due and unpaid before he assumed control of corp. IRS arguments that funds acquired after taxpayer's assumption of control were impressed with trust in favor of U.S. and that use of these funds for other purposes was violation of statute rejected. Statute didn't support finding of trust. Also, if trust were imposed on all after-acquired property it would conflict with priority laws for collection of back taxes.

*Reference(s):* 1978 P-H Fed. ¶37,367.30(25).

2. **Lower court issues not decided on appeal:** ADDITIONS TO TAX AND PENALTIES—100% penalty—failure to collect or pay over tax—factors of determination—intent and actions of parties involved; ADDITIONS TO TAX AND PENALTIES—100% penalty—failure to collect or pay over tax—scope and procedure.

*Reference(s):* 1978 P-H Fed. ¶37,367.15(70); 37,367.35(35).

# OPINION

Certiorari To The United States Court Of Appeals For The Sixth Circuit. Syllabus Petitioner assumed control of three corporations at a time when a delinquency existed for unpaid federal taxes withheld from employees' wages, while the specific funds withheld but not paid had been dissipated by predecessor officers and when the corporations had no liquid assets with which to pay the overdue taxes. During the six-month period of petitioner's control the corporations acquired funds sufficient [pg. 78-5012] to pay the taxes, but petitioner used the funds to pay employees' wages, rent, suppliers and other creditors, and to meet current business expenses. On petitioner's withdrawal from the corporations' business, he instituted a bankruptcy proceeding, in which the IRS filed a claim, including the delinquent back taxes, under §6672 of the Internal Revenue Code of 1954, which imposes personal liability for taxes on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof ...." The Court of Appeals held that petitioner was personally liable for the unpaid taxes under §6672. While petitioner concedes liability for the collection, accounting, and payment of taxes required to be withheld during the period of his control, he disclaims responsibility with respect to taxes withheld prior thereto, arguing that its conjunctive phrasing made §6672 inapplicable to him since he was clearly under no duty to collect and account for taxes incurred before that period. The Government maintains that the statutory language could be construed as describing in terms of their general responsibilities the persons potentially liable under the statute without regard to the fulfillment of all the duties with respect to specific tax dollars, and that §6672 imposed liability on petitioner as a "responsible person" because sums received during the period of his control were impressed with a trust in favor of the Government for the satisfaction of the overdue taxes and petitioner's willful use of such sums to pay other creditors violated the statute's "pay over" obligation. Though relying primarily on §6672 for its trust theory of liability, the Government suggests as also applicable §7501, which provides that "[w]henever a person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of the tax ... shall be held to be a special fund in trust for the United States [which] shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose." Held:

1. The phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit §6672 to persons responsible for paying over taxes that require collection (third-party taxes) and not to limit it to persons in a position to perform all three functions with respect to the specific taxes as to which the employer is delinquent. Petitioner's construction could lead to ready evasion of responsibility under §6672, and is thus at odds with the statute's purpose of assuring payment by third parties of withheld taxes. Pp. 7-11.

2. Neither §6672, nor §7501 impresses a trust on the after-acquired funds of an employer for payment of overdue withholding taxes absent tracing of those funds to taxes collected, and petitioner therefore was not liable under §6672 for using those funds for purposes other than payment of the overdue withholding taxes. Pp. 14-20.

(a) Section 6672 was not intended to impose an absolute liability without personal fault for failure to "pay over" amounts that should have been collected and paid over so that petitioner could not be liable unless he failed to pay funds held in trust for the United States. Pp. 14-15.

(b) Nothing in the language or legislative history of §6672 suggests that the effect of the "pay over" requirement was to impress a trust on the corporations' after-acquired cash, and the history of §7501 makes clear that it was not. Since the very reason for adding §7501 to the Code was that under existing law the liability of the person collecting and

withholding the taxes was *merely a debt*, §6672, whose predecessor was enacted while the debt concept of liability prevailed, hardly could have been intended to impose a trust on after-acquired cash. Although the trust concept of §7501 may inform the scope of the duty imposed by §6672, the language of §7501 makes clear that there must be a nexus between the funds collected and the trust created. Pp. 14-17.

(c) A construction of §§7501 and 6672 as imposing a trust on all after-acquired property without regard to the interests of others in those funds would conflict with the priority rules applicable to the collection of back taxes, which give secured parties interests in certain proceeds superior to tax liens. Pp. 17-20.

552 F.2d 159 [ 39 AFTR 2d 77-1423], reversed.

BRENNAN, J., delivered the opinion of the Court, in which STEWART, MARSHALL, [pg. 78-5013] POWELL, REHNQUIST, and STEVENS, JJ., joined. WHITE, J., filed a dissenting opinion, in which BURGER, C. J., and BLACKMUN, J., joined.

**Judge:** Mr. Justice BRENNAN delivered the opinion of the Court.

**[1]** Petitioner, an orthodontist by profession, on January 31, 1969, purchased the stock and assumed the management of three corporations engaged in the food vending business. The corporations were indebted at the time of the purchase for approximately $250,000 of taxes, including federal wage and Federal Insurance Contribution Act (FICA) taxes withheld from employees wages prior to January 31. The sums withheld had not been paid over when due, however, but had been dissipated by the previous management before petitioner acquired the businesses. After petitioner assumed control, the corporations acquired funds sufficient to pay the taxes, but petitioner used the funds to pay employees' wages, rent, suppliers and other creditors, and to meet other day-to-day expenses incurred in operating the businesses. The question to be decided is whether, in these circumstances, petitioner is personally liable under §6672 of the Internal Revenue Code of 1954, 26 U.S.C. §6672—which imposes personal liability for taxes on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof ...."—for the corporations' unpaid taxes withheld from wages prior to his assumption of control. The Court of Appeals for the Sixth Circuit held that petitioner was personally liable under §6672 for the unpaid taxes. 552 F.2d 159 [ 39 AFTR 2d 77-1423] (1977). We granted certiorari. [1] 434 U.S. 817 (1977). We reverse.

# I

The case arose from the filing by the Internal Revenue Service of a claim for the taxes in a proceeding instituted by petitioner in July 1969 for a Real Property Arrangement under Chapter XII of the Bankruptcy Act. The facts determined after hearing by the bankruptcy judge [ 34 AFTR 2d 74-5772], 74-2 U.S.T.C. §9719 (ND Ohio 1974), are not challenged. Petitioner purchased and assumed managerial control of the Tas-Tee Catering, Tas-Tee Vending, and Charles Corporations on January 31, 1969. When he bought the stock, petitioner understood, and the purchase agreement reflected, that the corporations had an outstanding obligation for taxes in the amount of $250,000 due for payment on January 31, including withheld employee wage and FICA taxes (hereinafter trust fund taxes). During the purchase negotiations, the sellers represented to petitioner that balances in the various corporate checking accounts were sufficient to pay these taxes as well as bills due other creditors. Relying on the representation, petitioner, on Saturday, February 1, sent four checks to the Internal Revenue Service in payment of the taxes. On Monday, February 3, petitioner discovered that the accounts were overdrawn and stopped payment on the checks. Thus, at the time that petitioner assumed control, the corporations had no liquid assets, and whatever trust fund taxes had been collected prior to petitioner's assumption of control had been dissipated.

Petitioner immediately advised the Internal Revenue Service (IRS) that the corporations had no funds

with which to pay the taxes, and solicited guidance concerning how the corporations should proceed. App. 36. There was evidence that IRS officials advised petitioner that they had no objection to his continuing operations so long as current tax obligations were met, and that petitioner agreed to do so and to endeavor to pay the arrearages as soon as possible. Trial Trans. 37-38. IRS never represented that it would hold petitioner harmless under §6672 for the back taxes, however.

To continue operations, petitioner deposited personal funds in the corporate account, and, to obtain inventory, agreed with certain suppliers to pay cash upon delivery. During petitioner's tenure, from January 31 to July 15, 1969, the corporations' gross receipts approximated $130,000 per week for the first few months but declined thereafter. The corporations "established a system of segregating funds for the payment of withheld taxes and did, in fact pay withheld taxes during the period February [pg. 78-5014] 1, 1969, to July 15, 1969." App. 30. The bankruptcy judge found, and IRS concedes, that the $249,212 in taxes paid during this period was approximately sufficient to defray current tax obligations. No taxes owing for periods prior to February 1, were paid however, and in July 1969, the corporations terminated operations and filed for bankruptcy.

## II

Several provisions of the Internal Revenue Code require third persons to collect taxes from the taxpayer. Among the more important are 26 U.S.C. §§3102(a) and 3402(a) which respectively require deduction from wages paid to employees of the employee's share of FICA taxes, and the withholding tax on wages applicable to individual income taxes. The withheld sums are commonly referred to as "trust fund taxes," reflecting the Code's provision that such withholdings or collections are deemed to be a "special fund in trust for the United States." 26 U.S.C. §7501. There is no general requirement that the withheld sums be segregated from the employer's general funds, however, or that they be deposited in a separate bank account until required to be paid to the Treasury. Because the Code requires the employer to collect taxes as wages are paid, 26 U.S.C. §3102(a), while requiring payment of such taxes only quarterly, [2] the funds accumulated during the quarter can be a tempting source of ready cash to a failing corporation beleaguered by creditors. [3] Once net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that IRS has recourse only against the employer for their payment. [4]

An employer who fails to pay taxes withheld from its employees' wages is, of course, liable for the taxes which should have been paid, 26 U.S.C. §§3102(b) and 3403. IRS has several means at its disposal to effect payment of the taxes so withheld. First, once it has been determined that an employer has been inexcusably delinquent, the IRS, upon giving hand-delivered notice, may require the employer, thereafter, and until further notice, to deposit withheld taxes in a special bank trust account within two banking days after collection to be retained there until required to be paid to the Treasury at the quarter's end. 26 U.S.C. §7512. Second, with respect to trust funds past due prior to any such notification, the amount collected or withheld "shall be held to be a special fund in trust for the United States [and] [t]he amount of such fund shall be assessed, collected and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose." 26 U.S.C. §7501. Thus there is made applicable to employment taxes withheld but not paid the full range of collection methods available for the collection of taxes generally. After assessment, notice, and demand, [5] IRS may, therefore, create a lien upon the property of the employer, 26 U.S.C. §6321, and levy, distrain and sell the employer's property, in satisfaction. 26 U.S.C. §§6331 to 6344.

Third, penalties may be assessed against the delinquent employer. Section 6656 of the Code imposes a penalty of 5% of the underpayment of any tax required to be deposited, and 26 U.S.C. §§7202 and 7215 provide criminal penalties respectively for willful failure to "collect, or truthfully account for and pay over" employment taxes, and for failure to comply with the requirements of §7512, discussed supra, regarding special accounting requirements upon notice by the Secretary.

Finally, as in this case, the officers or employees of the employer responsible for effectuating the collection and payment of employment taxes who willfully fail to do so are made personally liable to a

"penalty" equal to the amount of the delinquent taxes. Section 6672 provides, inter alia:

> "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully [pg. 78-5015] account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over ...."

Section 6671(b) defines "person," for purposes of §6672, as including "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." Also, §7202 of the Code, [6] which tracks the wording of §6672, makes a violation punishable as a felony subject to fine of $10,000, and imprisonment for 5 years. Thus, an employer-official or other employee responsible for collecting and paying taxes who willfully fails to do so is subject to both a civil penalty equivalent to 100% of the taxes not collected or paid, and to a felony conviction. Only the application to petitioner of the civil penalty provision, §6672, is at issue in this case.

## III

When the same individual or individuals who caused the delinquency in any tax quarter are also the "responsible persons" [7] at the time the Government's efforts to collect from the employer have failed, and it seeks recourse against the "responsible employees," see IRS policy statement P-5-60, IRS Manual, MT 1218-56, there is no question that §6672 is applicable to them. It is the situation that arises when there has been a change of control of the employer enterprise, here corporations, prior to the expiration of a tax quarter, or at a time when a tax delinquency for past quarters already exists that creates the question for our decision. In this case, petitioner assumed control at a time when a delinquency existed for unpaid employment taxes, while the specific funds withheld but not paid had been dissipated by predecessor officers and when the corporation had no liquid assets with which to pay the overdue taxes.

### A

Petitioner concedes that he was subject to personal liability under §6672 as a person responsible for the collection, accounting and payment of employment taxes required to be withheld between January 31, 1969, when he assumed control of the corporations and July 15, 1969 when he resigned. Tr. of Oral Arg. 8. His contention is that he was not, however, a responsible person within §6672 with respect to taxes withheld prior to his assumption of control and that §6672 consequently imposed no duty upon him to pay the taxes collected by his predecessors. Petitioner argues that this construction of §6672 follows necessarily from the statute's limitation of personal liability to "[a]ny person required to collect, truthfully account for *and* pay over any tax imposed by this title," who willfully fails to discharge those responsibilities (emphasis added). He argues that since the obligations are phrased in the conjunctive, a person can be subject to the section only if all three duties—(1) to collect, (2) truthfully account for, and (3) pay over—were applicable to him with respect to the tax dollars in question. See McCollough v. United States, 462 F.2d 588 [ 30 AFTR 2d 72-5217] (CA 5 1972). On the other hand, as the Government argues, the language could be construed as describing in terms of their general responsibilities, the persons potentially liable under the statute, without regard to whether those persons were in a position to perform all of the duties with respect to the specific tax dollars in question. Although neither construction is inconsistent with the language of the statute, we reject petitioner's as inconsistent with its purpose.

Sections 6672 and 7202 were designed to assure compliance by the employer with its obligation to withhold and pay the sums withheld, by subjecting the employer's officials responsible for the employer's decisions regarding withholding and payment to civil and criminal penalties for the employer's [pg. 78-5016] delinquency. If §6672 were given petitioner's construction, the penalties

easily could be evaded by changes in officials' responsibilities prior to the expiration of any quarter. Because the duty to*pay over* the tax arises only at the quarter's end, a "responsible person"who willfully failed to *collect* taxes would escape personal liability for that failure simply by resigning his position, and transferring to another the decisionmaking responsibility prior to the quarter's end. 8 Obversely, a "responsible person" assuming control prior to the quarter's end could, without incurring personal liability under §6672, willfully dissipate the trust funds collected and segregated by his predecessor. 9

That this result, obviously at odds with the statute's purpose to assure payment of withheld taxes, was not intended is buttressed by the history of the provision. The predecessor of §6672, §1308 (c), Revenue Act of 1918, §1308 (c), 40 Stat., pt. 1, 1143 (1919), provided, inter alia: "Any person who willfully refuses to pay, collect, or truthfully account for and pay over [taxes enumerated in §1308(a)] shall ... be liable to a penalty of the amount of the tax evaded or not paid, collected, or accounted for and paid over ..." 10 The statute remained unchanged in this respect until 1954 when the successor section to §1308(c), 11 was revised to its present form. Both before and after the 1954 revision the "person" potentially liable under the statute was defined in a separate provision, §1308(d), succeeded by present §6671(b), as, including "an officer or employee of a corporation, or a member or employer of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." When, in 1954, Congress added the phrase modifying person—"Any person required to collect, truthfully account for, and pay over any tax imposed by this title"—it was not seeking further to describe the class of persons defined in §6671(b) upon whom fell the responsibility for collecting taxes, but was attempting to clarify the type of tax to which the penalty section was applicable. Since under the 1954 amendment the penalty would otherwise be applicable to "any tax imposed by this title," the phrase modifying person was necessary to insure that the penalty provided by that section would be read as applicable only to failure to pay taxes which*require collection*, that is, third-party taxes, and not failure to pay *"any* tax imposed by this title," which, of course, would include *direct* taxes such as employer FICA and income taxes. As both the House and Senate Committees expressed it, "the application of this penalty is limited only to collected or withheld taxes which are imposed on some person other than the person who is required to collect, account for and pay over, the tax." 12 Thus, by adding the phrase modifying person, Congress was attempting [pg. 78-5017] to clarify the type of tax to which the penalty section was applicable, perhaps inartfully, by reference to the duty of the person required to collect them. This view is supported by the fact that the Commissioner of Internal Revenue issued a regulation shortly after the amendment, limiting the application of the §6672 penalty to third-party taxes. 22 Fed. Reg. 9148 (1957), now codified as, Treas. Reg. §301.6672-1, 26 CFR §301.6672-1 (1977).

We conclude therefore that the phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit §6672 to persons responsible for collection of third party taxes and not to limit it to those persons in a position to perform all three of the enumerated duties with respect to the tax dollars in question. 13

We turn then to the Government's contention that petitioner was subject to personal liability under §6672 when during the period in which he was a responsible person, the corporations generated gross receipts sufficient to pay the back taxes, but used the funds for other purposes.

## B

Although at the time petitioner became a responsible person the trust-fund taxes had been dissipated and the corporations had no liquid assets, the Government contends that §6672 imposed civil liability upon petitioner because sums received from sales in carrying on the businesses after January 31, 1969, were impressed with a trust in favor of the United States for the satisfaction of overdue employment taxes, and petitioner's willful use of those funds to pay creditors other than the United States, violated the obligation to "pay over" imposed by §6672. The Government does not argue that the statute requires a "responsible person" to liquidate corporate assets to pay the back taxes upon assuming control, however; it argues only that a trust was impressed on all cash received by the

corporations. Tr. of Oral Arg. 26, 28-29, 30-31, 32. We think that the construction of §6672 would not advance the statute's purpose, and moreover, is inconsistent with the context and legislative history of the provision and its relation to the Code's priority rule applicable to collection of back taxes.

**(1)**

The Government argues that its construction of the statute is necessary to effectuate the congressional purpose to assure collection and payment of taxes. Although that construction might in this case garner tax dollars otherwise uncollectible, its long-term effect arguably would more likely frustrate than aid the IRS' collection efforts.

At the time petitioner assumed control, the corporations owed back taxes, were overdue on their supplier accounts, and had no cash. To the extent that the corporations had assets unencumbered by liens superior to a tax lien, IRS could satisfy its claim by levy and sale. But as will often be the case, the corporations here apparently did not have such assets. The Government admits that in such circumstances, the IRS' practice is to be "flexible," Tr. of Oral Arg. 27, 28, 32, 48, and does not insist that the corporation discontinue operations, thereby substituting for certain loss at least the potential of recovering back taxes if the corporation makes a financial recovery. It argues nevertheless that the "responsible person" renders himself personally liable to the §6672 penalty by using gross receipts to purchase inventory, or pay wages, or even by using personal funds for those purposes. [14] so long as any [pg. 78-5018] third-party employment tax bill remains unpaid. [15]

Thus although it is in IRS' interest to encourage the responsible person to continue operation with the hope of receiving payment of the back taxes, if the attempt fails and the taxes remain unpaid, IRS insists that the §6672 personal liability penalty attached upon payment of the first dollar to a supplier. The practical effect of that construction of the statute would be that a well-counseled person contemplating assuming control of a financially beleaguered corporation owing back employment taxes would recognize that he could do so without incurring personal civil and criminal penalties only if there were available sufficient borrowed or personal funds fully to pay all back employment taxes before doing *any* business. If that course is unattractive or unavailable to the corporation, the Government will be remitted to its claim in bankruptcy. When an immediate filing for bankruptcy means a total loss, the Government understandably, as it did here, does not discourage the corporation from continuing to operate so long as current taxes are paid. As soon as the corporation embarks upon that course, however, the "responsible person" is potentially liable to heavy civil and criminal penalties not for doing anything which compromised the Government's collection efforts, but for doing what the Government regards as maximizing its chances for recovery. As construed by the Government, §6672 would merely discourage changes of ownership and management of financially troubled corporations and the infusion of equity or debt funding which might accompany it without encouraging employer compliance with tax obligations or facilitating collection of back taxes. Thus, recovery of employer taxes would likely be limited to the situation in which the prospective purchaser or management official is ignorant of §6672. [16]

**(2)**

As noted in the previous section, §6672 as construed by the Government would, in effect, make the responsible person assuming control of a business a guarantor for payment of the delinquent taxes simply by undertaking to continue operation of the business. That construction is precluded by the history and context of §6672 and cognate provisions of the code.

Section 6672 cannot be read as imposing upon the responsible person an absolute duty to "pay over" amounts which should have been collected and withheld. The fact that the provision imposes a "penalty" and is violated only by a "willful failure" is itself strong evidence that it was not intended to impose liability without personal fault. Congress, moreover, has not made corporate officers personally liable for the corporation's tax obligations generally, and §6672 therefore should be construed in a way which respects that policy choice. The Government's concession—that §6672 does not impose a duty

on the responsible officer to use personal funds or even to liquidate corporate assets to satisfy the tax obligations—recognizes that the "pay over"requirement does not impose an absolute duty on the responsible person to pay back taxes.

Recognizing that the statute cannot be construed to impose liability without fault, the Government characterizes petitioner's use of gross receipts for payment of operating expenses as a breach of trust, arguing that a trust was impressed on all after-acquired cash. Nothing whatever in §6672 or its legislative history suggests that the effect of the requirement to "pay over" was to impress a trust on the corporation's after-acquired cash, however. Moreover, the history of a related section, 26 U.S.C. §7501, [17] makes clear that it was not. Section [pg. 78-5019] 7501 of the Code provides, inter alia, that the "amount of tax ... collected or withheld shall be held to be a special fund in trust for the United States [which] shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such funds arose." This section was enacted in 1934. Act of May 10, 1934, ch. 277, §607, 48 Stat. 768, 26 U.S.C. §3661 (1939). The provision was added to H.R. 7835, 73d Cong., 2d Sess., by the Senate Finance Committee, which explained that:

> "Under existing law the liability of the person collecting and withholding the taxes to pay over the amount is merely a debt, and he cannot be treated as a trustee or proceeded against by distraint. Section [607] of the bill as reported impresses the amount of taxes withheld or collected with a trust and makes applicable for the enforcement of the Government's claim the administrative provisions for assessment and collection of taxes." S. Rep. No. 558, 73d Cong., 2d Sess., 53 (1934).

Since the very reason for adding §7501 was, as the Senate Report states, that "the liability of the person collecting and withholding the taxes is *merely a debt,*" (emphasis added), §6672, whose predecessor section was enacted in 1919 while the *debt* concept prevailed, hardly could have been intended to impose a *trust* on after-acquired cash.

We further reject the argument that §7501, whose trust concept may be viewed as having modified the duty imposed under §6672, [18] can be construed as establishing a fiduciary obligation to pay over after-acquired cash unrelated to the withholding taxes. The language of §7501 limits the trust to "the amount of the taxes *withheld orcollected.*" (Emphasis added.) Comparing that language to §6672 which imposes liability for a willful failure to *collect* as well as failure to pay over, makes clear that under §7501 there must be a nexus between the funds collected and the trust created. That construction is consistent with the accepted principle of trust law requiring tracing of misappropriated trust funds into the trustee's estate in order for an impressed trust to arise. See D. Dobbs, Remedies 424-425 (1973). Finally, for the reasons discussed in the next section, a construction of §7501 or §6672 as imposing a trust on all after-acquired corporate funds without regard to the interests of others in those funds would conflict with the priority rules applicable to the collection of back taxes.

**(3)**

We developed in Part II, supra, that the Code affords IRS several means to collect back taxes, including levy, distraint, and sale. But IRS is not given the power to levy on property in the hands of the taxpayer beyond the extent of the taxpayer's interest in the property, [19] and the Code specifically subordinates tax liens to the interests of certain others in the property, generally including those with a perfected security interest in the property. [20] For example, [pg. 78-5020] the Code and established decisional principles subordinate the tax lien to perfected security interests arising before the filing of the tax lien, [21] to certain perfected security interests in certain collateral, including inventory, arising after the tax lien filing when pursuant to a security agreement entered into before the filing, [22] and to collateral which is the subject of a purchase money mortgage regardless of whether the agreement was entered into before or after filing of the tax lien. [23] As a consequence, secured parties often will have interests n certain proceeds superior to the tax lien, and it is unlikely, moreover, that corporations in the position of those involved here could continue in operation without making some payments to

secured creditors under the terms of security agreements. Those payments may well take the form of cash or accounts receivable, which like other property may be subject to a security interest, when, for example, the security agreement covers the proceeds of inventory the purchase of which is financed by the secured party, or the security agreement requires the debtor to make payments under a purchase money mortgage by assigning accounts receivable which are the proceeds of inventory financed by the mortgage. [24] Thus, although IRS is powerless to attach assets in which a secured party has a superior interest, it would impose a penalty under §6672, if the responsible person fails to divert the secured party's proceeds to the Treasury without regard to whether the secured party's interests are superior to that of the Government. Surely Congress did not intend §6672 to hammer the responsible person with the threat of heavy civil and criminal penalties to pay over proceeds in which the Code does not assert a priority interest.

## IV

We hold that a "responsible person" under §6672 may violate the "pay over" requirement of that statute by willfully failing to pay over trust funds collected prior to his accession to control when at the time he assumed control the corporation has funds impressed with a trust under §7501, but that §7501 does not impress a trust on after-acquired funds, and that the responsible person consequently does not violate §6672 by willfully using employer funds for purposes other than satisfaction of the trust fund tax claims of the United States when at the time he assumed control there were no funds with which to satisfy the tax obligation and the funds thereafter generated are not directly traceable to collected taxes referred to by that statute. [25] That portion of the judgment of the Court of Appeals on respondent's cross-appeal holding petitioner liable under §6672 for wage withholding and FICA taxes required to be collected from employees' wages prior to January 31, 1969 is*Reversed*.

**Judge:** Mr. Justice REHNQUIST, concurring. I join the Court's opinion and write separately only to emphasize that part of it which I think is critical to the disposition of this case. Both petitioner and the government have available to them arguments, based upon two different clauses of §6672, which, if accepted, would enable them to prevail on the literal language of the clause alone without further consideration of other factors. Petitioner argues with considerable cogency that the portion of §6672 phrased *conjunctively*, ante, p. 5, fails to include him within the class of persons liable for the penalty imposed by that section. If his argument were to be accepted, that would be the end of the case. I agree with the Court that his argument should be rejected, because its appeal based on the literal language of the clause is more than outweighed by the fact that the clause was added in 1954 very probably to narrow the class of persons who might be subject to the predecessor penalty provisions which were phrased in the*disjunctive*. Having won this point the government could then rely on the disjunctive literal language of the statute and its predecessors and argue that petitioner, a responsible corporate official at some point in time, is liable for all taxes which he failed to collect or, as is the case here, pay over. But the government does not advance this argument, realizing, no doubt, that it is foreclosed largely for the reasons given by the Court in Part III-B(2) of its opinion. I fully agree with the Court's conclusion in this respect, stressing in addition only the fact that both the language and history of §6672 make it perfectly clear that liability for this penalty cannot be imposed in the absence of a willful failure and the word "willful," used as it is in this context in conjunction with the word "penalty," requires some action that tends to impede collection of the corporation's trust fund taxes before liability can attach. For example, even the Government concedes that a responsible officer need not use personal funds or liquidate corporate assets to satisfy past tax obligations which have arisen under the withholding provisions before the official assumed responsibility. Ante, p. 15. It should be apparent from the Court's opinion, however, that this notion of "fault" may have little to do with other sections of the Tax Code. Its importation into §6672 is compelled by the normal canons of statutory construction, but those canons may speak differently as to the meaning of the word "willful" or the concept of "fault" in other sections of the Code. Indeed, the interpretation of §6672 we adopt today is limited by the very factors which caused us to adopt it.

**Judge:** Mr. Justice WHITE, with whom The CHIEF JUSTICE and Mr. Justice BLACKMUN join, dissenting. The Court recognizes, as even petitioner concedes, that 26 U.S.C. §6672 makes those individuals who are "required to collect, truthfully account for, and pay over any tax imposed by this title" ("responsible

persons") personally liable for the failure to use available corporate funds to pay to IRS amounts equal to sums withheld [pg. 78-5022] from employees during those periods in which they were "responsible persons." It also holds, and I agree, that the obligations of a "responsible person" under §6672 are not limited to liabilities incurred during the period during which he occupied such a position but that he "violate[s] the 'pay over' requirement of that statute by willfully failing to pay over trust funds collected prior to his accession to control when at the time he assumed control the corporation has funds impressed with a trust under §7501 ...." Ante, at 20. From this conclusion it would seem to automatically follow that one who becomes a "responsible person" subsequent to the collection of withholding tax payments from employees is, for purposes of §6672, in the same shoes as one who was a "responsible person" at the time of collection. After all, as the Court recognizes, the purpose of §6672 is to assure the collection and payment of taxes, and it is difficult to comprehend why the United States should be precluded from looking to what is probably its best source, the flow of funds coming into business entities, merely because a change in ownership or management has occurred subsequent to the time when the amounts in question were withheld from employees. Moreover, there is absolutely nothing in the language or legislative history of §6672 which distinguishes between the obligations of "responsible persons" on the basis of when they assumed such a position. Indeed, this is the thrust of Part III-A of the Court's opinion. Inexplicably, however, and in disregard of these controlling principles, the Court holds that a "responsible person" does not violate §6672 by willfully using funds acquired by the corporation after his accession for purposes other than the satisfaction of withholding tax claims of the United States arising from duties imposed by law prior to his accession.

I

Although the Court concedes that the construction of §6672 adopted by the Court of Appeals in this case and urged by the United States "might garner tax dollars otherwise uncollectible" in cases such as this, ante, at 12, it rejects this construction in favor of one which permits corporations to escape their tax obligations through change of ownership or management primarily because of its belief that the free enterprise system is best promoted by the use of tax funds to subsidize the takeover of financially beleaguered companies. The majority deems it desirable to encourage "changes of ownership and management of financially troubled corporations and the infusion of equity or debt financing," ante, at 14, and construes the statute in a manner it believes to be consistent with this goal. Apparently, in the Court's view, tax funds are better used to subsidize such takeovers than to meet other social needs for which Congress has specifically appropriated tax funds. But I believe that the Court exceeds its mandate by construing the statute so as to conform to its conclusions concerning the best use of tax dollars collected from American employees. Section 6672 is not an appropriations statute or even a law, like the bankruptcy statute, designed to accomplish substantive ends. The statute lends no support to the Court's conclusion that an insolvent corporation with unpaid withholding taxes should be permitted to continue its business under the aegis of a successor officer, even at the cost of the United States' tax claim. It is, purely and simply, a tax collection statute which is designed to do nothing more than assure that taxes withheld from employees find their way to the United States to be spent for those purposes defined by Congress. In my view, it is error to construe the statute in a way which permits the diversion of these funds from the uses determined by Congress to be in the public interest to ends which in the Court's view would better promote the general welfare. The Court relies upon the fact that IRS often applies a flexible approach and does not always insist that financially troubled concerns use all available funds to pay back taxes if such payment would require the corporation to discontinue operations. For present purposes, I assume that IRS may properly so exercise its discretion and may, where it deems it appropriate, even waive any resort to §6672 if the company should ultimately fail. What this establishes, however, is that the Court's construction of §6672 is totally unnecessary even given its perception that a rigid application of the statute to successor employees would in the long run damage the economy and hinder IRS collection efforts. It is one thing to conclude that there are some circumstances in which IRS might decide that the rigid application of §6672 is not in its own interests but quite another matter to prevent IRS from using this valuable collection tool in connection with successor employers and managers where it is convinced that its application will effectuate the collection of taxes. Moreover, it is far from clear that permitting employers to use funds acquired subsequent to their assumption of control [pg. 78-5023] for purposes other than the satisfaction of the withholding tax claims of the United States will serve primarily as an aid to financially troubled concerns rather than as an invitation to defraud the Treasury. The Court holds that

a person who assumes control must satisfy the business' pre-existing trust fund tax obligations if the concern has funds available at the time he assumes control. Apparently, neither it nor IRS would require the sale of the business' assets in order to meet such obligations. It is clear, however, that there will be a great number of companies which do not have cash available at the time of a change in ownership and management but are nevertheless viable, ongoing enterprises not in need of government subsidization. Furthermore, any businessman with a minimum of acumen could in most circumstances make sure that the financial affairs of the company are so arranged that there are no uncommitted funds available at the moment of his accession to control. Finally, there can be little doubt that the Court's ruling today will result in changes in management and ownership which are in fact nothing but subterfuges to avoid using the company's funds to pay outstanding trust fund tax obligations. The investors in any corporation seriously in arrears will also have a strong incentive to arrange changes of management, whether sham or real, in order to permit funds acquired by the corporation to be used for purposes other than satisfying its tax obligations without exposing its managers to personal liability. In addition, changes of ownership, often more formal than real, will frequently be arranged for no purpose other than to permit the concern to use future funds without regard to its pre-existing tax obligations.

## II

The Court next makes the remarkable suggestion that §6672 cannot be read as imposing an absolute duty upon "responsible persons" to use after-acquired funds to pay over amounts which should have been withheld because to do so would be to impose liability without personal fault which, according to the Court, is precluded by the statutory requirement of a "willful failure." As the concurring opinion of Mr. Justice REHNQUIST suggests, the term "willful" in our jurisprudence, particularly in connection with tax matters, normally connotes nothing more than a conscious act or omission which violates a known legal duty. In this case, there can be no doubt that petitioner acted willfully because with full knowledge that the corporations in question had outstanding tax obligations he chose to apply gross receipts received subsequent to his purchase to purposes other than payment of these taxes. It may be that the Court believes that the requirement of a "willful failure" is satisfied only by a showing of conduct which is immoral in some undefined sense. This view, however, is not only unsupported by evidence of legislative intent but would also prove far too much because even in instances where there is continuity of ownership and, under the Court's view, §6672 is fully applicable, it will often be the case that "responsible persons" are not morally at fault for the failure to pay-over in a timely fashion. Ultimately, the Court is reduced to arguing that nothing in the legislative history of §6672 indicates that the statute requires "responsible persons" to pay over after-acquired cash to meet outstanding tax obligations. Ante, at 15. I would have supposed that the burden of proof for a statutory construction as extraordinary as that adopted by the Court today is at the very least on its proponents. All that the Court is able to offer, however, is a brief excerpt from the legislative history of an entirely separate statute enacted some 15 years after the predecessor of §6672 which, with all respect, has nothing to do with the question to be decided.

## III

Finally, the Court purports to find support for its construction of §6672 from the fact that priority rules applicable to the collection of back taxes in some cases subordinate tax liens to certain other interests in the property. Although this discussion may be of some educational value, it has absolutely nothing to do with the case at hand or the proper construction of §6672. In the first place, as petitioner conceded at oral argument, the funds which came into his corporations subsequent to his assumption of control were unencumbered by liens. Tr. of Oral Arg. 4-5. Moreover, the conclusion which the Court draws from its exploration of priority rules for tax liens that "Congress did not intend §6672 to hammer the responsible person with the threat of heavy civil and criminal penalties to pay over proceeds in which the Code does not assert a priority interest," ante, at 20, again proves far too much. If the mere possibility that others might have interests superior to a tax lien in proceeds which should under §6672 be paid over to the [pg. 78-5024] United States is sufficient to render the statute inapplicable despite the fact that the funds in question are unencumbered, the section, for all practical purposes, has been judicially deleted from the United States Code. Even where there is no change in "responsible persons"

or there are corporate funds available to a successor to make back payments of trust fund tax claims, situations in which the Court would apply §6672, there will be many occasions in which a tax lien would not have priority over all other hypothetical interests in funds which must be paid over to the United States under the statute. The fact is, of course, as the Court recognizes earlier in its opinion, ante, at 4-5, that the tax lien is merely one of several remedies which IRS has at its disposal to effect the collection of taxes withheld by employers from employees and §6672 was clearly not designed to be superfluous but rather independent of and a supplement to other means of collecting trust fund taxes from employers. Because I believe that the Court has, without justification, created yet another means of impeding the collection of taxes for purposes designated by Congress, I dissent from Parts III-B and IV of the Court's opinion.

1

In the Court of Appeals, petitioner appealed from a decision of the District Court holding him liable for withholding taxes for the period February 1 to July 15, 1969. The Court of Appeals reversed, 552 F.2d, at 161-163, and review of that holding was not sought here. Only the decision on the Government's cross-appeal holding petitioner liable for withholding taxes collected prior to January 31 is before us. Id., at 163-165.

2

See Treas. Reg. §§31.6011(a)-1(a)(1) and 31.6011(a)-4, 26 CFR §§31.6001(a)-1(a)(1) and 31.6011(a)-4 (1977), regarding return filing requirements. Treas. Reg. §31.6151(a), 26 CFR §31.6151(a) (1977), requires that the tax be paid when the return is due for filing. Treas. Reg. §31.6011(a)-5, 26 CFR §31.6011(a)-5 (1977), provides that monthly returns may be required in lieu of quarterly returns at the direction of the District Director. See also 26 U.S.C. §7512(b).

3

See United States v. Sotelo, post, at 9 n. 10 [ 42 AFTR 2d 78-5001].

4

See Moore v. United States, 465 F.2d 514, 517 [ 30 AFTR 2d 72-5242] (CA5 1972); Dillard v. Patterson, 326 F.2d 302, 304 [ 13 AFTR 2d 301] (CA5 1963); United States Fidelity & Guaranty Co. v. United States, 201 F.2d 118, 120 [ 43 AFTR 131] (CA10 1952). This at the least is the administrative practice. See Brief for Respondent, at 10-11.

5

Assessment is made by recording the liability of the taxpayer in the office of the Secretary, 26 U.S.C. §6203, and notice of the assessment and demand for payment generally are required to be made within 60 days of the assessment. 26 U.S.C. §6303(a).

6

Section 7202 provides:

"Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

7

The cases which have been decided under §6672 generally refer to the "person required to collect, truthfully account for, and pay over any tax imposed by this title" by the shorthand phrase "responsible person." We use that phrase without necessarily adopting any of the constructions placed upon it in the decisions.

8

Petitioner argues that his construction of the statute is consistent with imposition of §6672 liability upon a "responsible person" removed before the end of the quarter, explaining that in such case §6672 liability would attach because "[w]hile the taxpayer was removed as a responsible officer before the time payment was required *to be made,* he nevertheless came under the*requirement* of making the payment when he collected the taxes." Brief for Petitioner 9 (emphasis in original). "All three elements required to charge the taxpayer with the penalty ... did in fact converge." Ibid. If that is so, we fail to see why all three elements did not "converge" when petitioner assumed control. In both circumstances liability is asserted under the statute as to a person not in a position to fulfill each of the duties with respect to the specific tax dollars in question. Moreover, apart from any illogic from which that argument suffers, it is highly dubious that Congress intended the words of the statute to create the almost metaphysical distinction suggested by petitioner's argument between a choate duty to perform all three functions upon one in control at the start of a tax quarter and an inchoate duty as to one assuming control in mid-quarter.

9

Although petitioner argues that neither §6672 nor any other provision of the code imposes liability in this situation, he suggested at oral argument that liability might lie under ordinary trust principles. Tr. of Oral Arg. 14, 20-21.

10

As introduced in the House, H. R. 12863, 65th Cong., 2d Sess., §1308 (1918), §1308 was a re-enactment of existing law. Revenue Act of 1917, ch. 63, §1004, 40 Stat. 325-326. The Senate Finance Committee completely rewrote the section, adding the major penalty provisions which have since continuously existed in the Code. The Committee Reports do not shed any light on the problem at hand, however. Between 1918 and 1954, the only change in §1308(c), other than renumbering in the various Codes, see n. 11, infra, was that effected by the Revenue Act of 1924, ch. 234, §1017(d), 43 Stat. 344, which changed the word "refuses" in the 1918 Act to "fails," and which in §1017(b), the predecessor of Internal Revenue Code of 1954, 26 U.S.C. §7202, changed the penalty from a misdemeanor to a felony.

11

Under the 1939 code, the successor provisions to §1308(c) were separately codified with each of the third-party collection taxes to which they were applicable. 26 U.S.C. §2557(b)(4) (1939) (narcotics); 26 U.S.C. §2707(a) (1939) (firearms); 26 U.S.C. §1821(a)(3) (1939) (documents); 26 U.S.C. §1718(c) (1939) (admissions and dues).

12

S. Rep. No. 1622, 83d Cong., 2d Sess., 596 (1954); H. R. Rep. No. 1337, 83d Cong., 2d Sess., A420 (1954). The complete text of the Senate Report's discussion of §6672 is as follows:

"This section is identical with that of the House bill.

"This section is similar to certain sections of existing law which prescribe a penalty equal to the total amount of the tax evaded, not collected, or not accounted for and paid over, in the case of willful

failure to collect, truthfully account for and pay over any tax imposed by this title, or willful attempt in any manner to evade or defeat such tax.*However, the application of this penalty is limited only to the collected or withheld taxes which are imposed on some person other than the person who is required to collect, account for and pay over, the tax*. Under existing law this penalty is not applicable in any case in which the additions to the tax in the case of delinquency or fraud are applicable. Under this section the additions to the tax provided by section 6653, relating to negligence or fraud, shall not be applied for any offense to which this section is applicable." (Emphasis added.)

The House Report is nearly identical.

---

13

See Rubin v. United States, 380 F.Supp. 1176, 1179 [ 35 AFTR 2d 75-689] (WD Pa. 1974), aff'd, 515 F.2d 507 (1975); Louisville Credit Men's Assn., Inc. v. United States, [ 32 AFTR 2d 73-6116], 73-2 U. S. T. C., ¶9740 (Sept. 29, 1970, ED Ky.); Tiffany v. United States, 228 F.Supp. 700 [ 13 AFTR 2d 1546] (N.J. 1963).

---

14

See, e.g., Sorenson v. United States, 521 F.2d 325, 327 [ 36 AFTR 2d 75-5659] (CA9 1975). The court reasoned that payment of creditors from personal funds is a willful failure to pay because when personal funds are used for corporate purposes they become corporate funds, and any payment of them to creditors other than the United States is an unlawful preference. That reasoning was unnecessary to the result reached in the case, however. The responsible person there had used personal funds to pay net wages to employees. The finding of liability therefore could have been founded on the failure to collect and withhold taxes as wages were paid. *Cf.* 26 U.S.C. §3505.

---

15

Indeed, IRS' policy is to augment the personal liability of the responsible person by earmarking the taxes he collects and pays from *current* wages first to the past due *direct* corporate employment tax, that is the*employer's share* of FICA taxes, thus rendering him liable for trust fund taxes he thought were paid, but which the Government does not credit as paid. This policy prevails unless the Government is notified in writing that the taxes are to be credited solely to current employment taxes. When payment results from enforced collection methods, however, IRS nevertheless refuses to honor the designation. IRS policy statement P-5-60, IRS Manual, MT 1218-56.

---

16

There might be cases in which a person would undertake to continue operations knowing of the risk of personal liability, but confident that the prospects for profitability make that risk acceptable. The fact that such risk-taking might occur in marginal cases would not, however, justify a construction of the statute as requiring the risk when to impose it does not further the overall deterrent and tax collection goals of the statute.

---

17

Section 7501 provides:

> ("(a)) General rule. "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of the tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

("(b)) Penalties. "For penalties applicable to violations of this section, see sections 6672 and 7202."

---

18

Although the Government primarily relies upon §6672, it suggests that liability would attach under §7501, as well, for a breach of the trust established by that section. Brief for Respondent, 18 n. 6. Petitioner, on the other hand, argues that §7501 is applicable only to employers, since the applicable definitional section, 26 U.S.C. §7701 (a)(1) defines "person" as "construed to mean and include an individual, a trust, estate, partnership, association, company or corporation," while that applicable to §6672, defines "person" as including "an officer or employee of a corporation ...." 26 U.S.C. §6671(b). Since we do not decide whether §7501 establishes a basis of liability applicable to responsible persons independent of §6672, we need not address these contentions. We decide only that §7501 properly may be regarded as informing the scope of the duty imposed by §6672.

---

19

Section 6321 provides that the lien shall be applicable to "all property and rights to the property, whether real or personal, *belonging* to such person. (Emphasis added.) We have held that the extent of the tax debtor's interest in the property is determined by state law, and that the lien cannot attach when the debtor has no interest. Aquilino v. United States, 363 U.S. 509 [ 5 AFTR 2d 1698] (1960); United States v. Durham Lumber Co., 363 U.S. 522 [ 5 AFTR 2d 1703] (1960).

---

20

The basic priority rules for tax liens are established by 26 U.S.C. §6323, which, in addition to subordinating the federal tax lien to certain perfected security interests, makes superior to the lien interests of persons who, without actual knowledge of the lien, acquire interests in personal property purchased from retail dealers in the ordinary course of trade, personal property (less than $250.00) purchased in casual sales, securities, motor vehicles, real property by virtue of a lien for certain local real property and special assessment taxes, or for mechanic's liens. Id., §§6323(b)(1) to (7).

---

21

Section 6323(a) provides:

"The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."

---

22

Section 6323(c) provides that a tax lien is subordinate to a security interest which came into existence *after* the tax lien filing but which is a "commercial transactions financing agreement protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation." §6323(c)(B). (A commercial transactions financing agreement includes accounts receivable and inventory, §6323(c)2(c)).

The local law applicable is, in 49 States and the District of Columbia, the Uniform Commercial Code, and 26 U.S.C. §6323, as amended by the Federal Tax Lien Act of 1966, Pub. L. No. 89-719, §101, 80 Stat. 1125 (1966), was in large part adopted in order to "conform the lien provisions of the internal revenue laws to the concepts developed in [the] Uniform Commercial Code." H. R. Rep. No. 1884, 89th Cong., 2d Sess., 1 (1966).

Under the U.C.C., a perfected security interest is superior to a judgment lien creditor's claim in the property, see U.C.C. §§9-301; 9-312. Perfection of a security interest in inventory or accounts receivable occurs only when a financing statement is filed, U.C.C. §9-302, and when it has attached. U.C.C. §9-303(18). Attachment requires an agreement, value given by the secured party and that the debtor have rights in the collateral. U.C.C. §9-204. Thus when a security agreement exists and filing has occurred prior to the filing of a tax lien to secure advances made after the tax filing, perfection is, at the least, achieved when the secured party makes the advance. When that occurs after the tax lien has been filed, §6323(d) protects the secured party from the federal tax lien if the advance is made not later than 45 days after the filing of the tax lien or upon receipt of actual notice of the tax lien filing, whichever is sooner. 26 U.S.C. §6323(d). For a more detailed explanation of these provisions see Coogan, The Effect of the Federal Tax Lien Act of 1966 Upon Security Interests Created Under the U.C.C., 81 Harv. L. Rev. 1381, 1403-1413 (1968).

---

23

Decisional law has long established that a purchase money mortgagee's interest in the mortgaged property is superior to antecedent liens prior in time, see United States v. New Orleans R. Co., 12 Wall. 362 (1870), and, therefore, a federal tax lien is subordinate to a purchase money mortgagee's interest notwithstanding that the agreement is made and the security interest arises after notice of the tax lien. The purchase money mortgage priority is based upon recognition that the mortgagee's interest merely reflects his contribution of property to the taxpayer's estate and therefore does not prejudice creditors who are prior in time.

In enacting the Tax Lien Act of 1966, Congress intended to preserve this priority, H. R. Rep. No. 1884, 89th Cong., 2d Sess., 817 (1966), and the IRS has since formally accepted that position. Rev. Rul. 68-57, 68-1 Cum. Bull. 553; see also IRS Gen. Counsel's Op. No. 13-60, 7 CCH 1961 Stand. Fed. Tax Rep. ¶6307 (Aug. 11, 1960).

---

24

A security interest in accounts may be perfected by filing, U.C.C. §9-302, while a security interest in cash, except as hereafter noted, can be perfected only by possession. U.C.C. §9-304(1). When the secured party perfects a security interest in inventory and proceeds, the security interest in accounts which are proceeds is continuously perfected. U.C.C. §9-306(3)(a). The identifiable cash proceeds are also perfected, but only for a 10-day period. U.C.C. §9-306(3).

---

25

The basis for the dissent's contrary construction is that "it is difficult to comprehend why the United States should be precluded from looking to what is probably its best source, the flow of funds coming into business entities, merely because a change of ownership or management has occurred subsequent to the time when the amounts in question were withheld from employees." Post, at 1-2. We agree that the *employer's* liability is unaffected by changes in management, and the Government may, under various code provisions, enforce its lien against any employer asset including the flow of incoming cash. But that does not answer the question before us which is whether §6672 imposes a penalty on a responsible person for failing to pay over withheld taxes when those taxes had been dissipated before he acceded to control.

END OF DOCUMENT -

© 2007 Thomson/RIA. All rights reserved.

**Internal Revenue Service**
Appeals Office
4050 Alpha Road
Suite 517, MC:8000NDAL
Dallas, TX 75244

Date: **MAY 15 2008**

SCOTT A JACKSON
3215 HANOVER ST
DALLAS TX 75225

**Department of the Treasury**

**Person to Contact:**
Deborah Glover
Employee ID Number: 75-13056
Tel: (972) 308-7051
Fax: (972) 308-7388
**Refer Reply to:**
AP:FW:DAL:DXG
**In Re:**
Trust Fund Recovery Penalty
**SSN/EIN Number:**
6068
**Name of Corporation:**
G & H MANUFACTURING LTD
**Tax Period(s) Ended:**
12/2003 03/2004 06/2004 03/2005

Dear Mr. Jackson:

We are sorry that we couldn't reach a satisfactory agreement with you about the proposed assessment of the Trust Fund Recovery Penalty. We are returning your case to the Collection Area Director for assessment.

It may be to your advantage to pay the full amount due now in order to reduce your interest charges. Make your check payable to the United States Treasury and mail it to the office address shown above. If you don't pay the amount due now, you will be billed. After you have paid the amount due, you may file a claim for refund. Please refer to the information below about claims.

**Special Bond to Delay IRS Collection Actions for Any Period as soon as a Claim for Refund is Filed**

If you request a claim for a refund for a Trust Fund Recovery Penalty tax period you may also make a request to delay collection by posting a bond with the IRS. To request such a delay you must do the following within 30 days from the date of the official notice of assessment and demand (the first bill):

1. Pay the tax for one employee for each period (quarter) of liability that you wish to contest, if we have based the amount of the penalty on unpaid employment taxes; or pay the tax for one transaction for each period that you wish to contest, if we've based the amount of the penalty on unpaid excise tax.

2. File a claim for a refund of the amount(s) you paid using Form(s) 843, *Claim for Refund and Request for Abatement*

EXHIBIT
D

3. Post a bond with the IRS for one and one half times the amount of the penalty that is left after you have made the payment in number 1, above.

If the IRS denies your claim when you have posted the bond, you then have 30 days to file suit in your United States District Court or the United States Court of Federal Claims before the IRS may apply the bond to your trust fund recovery penalty and the interest accruing on this debt.

**Claim for Refund with no Special Bond**

You may file a claim for refund without posting a special bond with the IRS. To do so, follow action items 1 and 2 above. Note that filing a claim without posting a bond does not prohibit IRS from collections.

If the IRS has not acted on your claim within 6 months from the date you filed it, you can file a suit for refund. You can also file a suit for refund within 2 years after the IRS has disallowed your claim.

**Consideration by the Courts**

You may take your case to the United States Court of Federal Claims or to the United States District Court. These courts have no connection with the IRS. As mentioned above, before you can file a claim with these courts, you must pay a portion of the tax liability and file a claim for refund with the IRS.

For further information about filing a suit you may contact the Clerk of your District Court or the Clerk of the United States Court of Federal Claims, 717 Madison Place, N.W., Washington, D.C. 20005.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely,

G. Smith
Appeals Team Manager

cc: James N Howard

B120879

75225 IRS USE ONLY SB W 18221-166-75711-8 0 0 200826 CP: 4

Department of the Treasury
**Internal Revenue Service**
P.O. Box 249
Memphis, TN 38101-0249

For assistance, call:
1-800-829-8374
**Your Caller ID:** 198024

**Notice Number:** CP49
**Date:** July 7, 2008

108874.513079.0469.010 1 AT 0.346 695

**Taxpayer Identification Number:**
6068
**Tax Form:** 1040
**Tax Year:** December 31, 2007

SCOTT A JACKSON
3215 HANOVER ST
DALLAS TX 75225-7640156

108874

For account of: SCOTT A & BLAYN B JACKSON

## Overpaid Tax Applied to Other Taxes You Owe

We applied $4,147.18 of the overpaid tax on your 2007 tax return to the unpaid balance of other federal taxes which our records show you owe.

Since we applied all of your overpayment to pay other taxes you owed, we can't apply the amount you requested to your 2008 Estimated Tax. Therefore, you may need to adjust your Estimated Tax payments to avoid a penalty for underpayment.

You may still be due a refund if we applied only part of your overpayment to other taxes. You also may be due a refund if you recently made a payment against the other taxes that we had not credited when we applied your overpayment. In either case, you will receive a check for any refund due you as long as the amount is greater than one dollar. You must request a refund of less than one dollar. If you have any questions, please call us at the number listed above.

The figures below show our calculation:

### How We Applied Your Overpayment

| | |
|---|---|
| Amount of Overpaid Tax on Your Return | $4,114.00 |
| Amount of Interest You Earned on Overpayment | $33.18 |
| Total Amount Due You | $4,147.18 |
| Total Amount Applied | $4,147.18 |
| Amount You Will Receive as a Refund (any interest due you will be added) | $.00 |

### Where We Applied Your Overpayment

| Form(s) | Tax Period(s) | Amount(s) Applied |
|---|---|---|
| CVL PEN | December 31, 2003 | $4,147.18 |

We wanted to ensure that both you and your spouse receive this notice, so we've sent a copy to each of you. Each copy contains the same information related to your joint account.

7/14/2008 11:28:23 AM

Scott A. Jackson 450436068

Form **2848** (Rev. March 2004)

# Power of Attorney and Declaration of Representative

▶ Type or print. ▶ See the separate instructions.

OMB No. 1545-0150

For IRS Use Only

Received by:

Name

Telephone

Function

Date / /

**Part I** **Power of Attorney**

**Caution:** *Form 2848 will not be honored for any purpose other than representation before the IRS.*

**1 Taxpayer information.** Taxpayer(s) must sign and date this form on page 2, line 9.

| Taxpayer name(s) and address | Social security number(s) | Employer identification number |
|---|---|---|
| Scott A. Jackson<br>3215 Hanover Street<br>Dallas, Texas 75225-7640 | 6068 | |
| | Daytime telephone number | Plan number (if applicable) |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
|---|---|
| G. Tomas Rhodus, Esq.<br>1601 Elm Street, Suite 4100<br>Dallas, Texas 75201 | CAF No. 7800-07195-R<br>Telephone No. 214-954-4135<br>Fax No. 214-953-1332<br>Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |
| Name and address<br>David C. Gair<br>1601 Elm Street, Suite 4100<br>Dallas, Texas 75201 | CAF No. 0301-45178-R<br>Telephone No. 214-954-4135<br>Fax No. 214-953-1332<br>Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |
| Name and address | CAF No.<br>Telephone No.<br>Fax No.<br>Check if new: Address ☐ Telephone No. ☐ Fax No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty (see the instructions for line 3) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) (see the instructions for line 3) |
|---|---|---|
| Excise Tax | 720 | Q1:2003-Q1:2005 |
| Civil Penalty (Trust Fund) | N/A | Q1:2003-Q1:2005 |
| | | |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for **Line 4. Specific uses not recorded on CAF.** ........ ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the power to sign certain returns, or the power to execute a request for disclosure of tax returns or return information to a third party. See the line 5 instructions for more information.

**Exceptions.** An unenrolled return preparer cannot sign any document for a taxpayer and may only represent taxpayers in limited situations. See **Unenrolled Return Preparer** on page 2 of the instructions. An enrolled actuary may only represent taxpayers to the extent provided in section 10.3(d) of Circular 230. See the line 5 instructions for restrictions on tax matters partners.

List any specific additions or deletions to the acts otherwise authorized in this power of attorney:

..................................................................................................

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH,** refund checks, initial here ____________ and list the name of that representative below.

Name of representative to receive refund check(s) ▶

**For Privacy Act and Paperwork Reduction Notice, see Instructions.**

VDA

Form **2848** (Rev. 3-2004)

WKAT F00690-J01 88

6/19/2008 4:35:10 PM

Scott A. Jackson 450436068

Form 2848 (Rev. 3-2004) Page 2

**7 Notices and communications.** Original notices and other written communications will be sent to you and a copy to the first representative listed on line 2.

a If you also want the second representative listed to receive a copy of notices and communications, check this box ▶ ☐

b If you do not want any notices or communications sent to your representative(s), check this box ▶ ☐

**8 Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here ▶ ☐

**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**9 Signature of taxpayer(s).** If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

▶ **IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.**

[signature] Signature — 6/19/08 Date — Title (if applicable)

Scott A Jackson Print Name — PIN Number — Print name of taxpayer from line 1 if other than individual

Signature — Date — Title (if applicable)

Print Name — PIN Number

**Part II Declaration of Representative**

**Caution:** *Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program, see the instructions for Part II.*

Under penalties of perjury, I declare that:

- I am not currently under suspension or disbarment from practice before the Internal Revenue Service;
- I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;
- I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and
- I am one of the following:

a Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.

b Certified Public Accountant—duly qualified to practice as a certified public accountant in the jurisdiction shown below.

c Enrolled Agent—enrolled as an agent under the requirements of Treasury Department Circular No. 230.

d Officer—a bona fide officer of the taxpayer's organization.

e Full-Time Employee—a full-time employee of the taxpayer.

f Family Member—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).

g Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d) of Treasury Department Circular No. 230).

h Unenrolled Return Preparer—the authority to practice before the Internal Revenue Service is limited by Treasury Department Circular No. 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under examination by the IRS. See Unenrolled Return Preparer on page 2 of the instructions.

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED.** See the Part II instructions.

| Designation—insert above letter (a–h) | Jurisdiction (state) or identification | Signature | Date |
|---|---|---|---|
| A | Texas | [signature] | 7-14-2008 |
| A | TX/CO | [signature] | 7-14-08 |
| | | | |

VAA 700080-082 22

Form **2848** (Rev. 3-2004)

LooperReed & McGraw
ATTORNEYS

A Professional Corporation
4100 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
V 214.954.4135
F 214.953.1332
www.lrmlaw.com

July 29, 2008

*Via Hand Delivery*

Internal Revenue Service
Attn: Margaret Glasgow
Technical Services Manager
1100 Commerce Street, MC 5028 DAL
Dallas, TX 75242

| | | |
|---|---|---|
| *Re:* | **TAXPAYER:** | **Scott A. Jackson** |
| | **SSN:** | **6068** |
| | **TYPE OF TAX:** | **Trust Fund Recovery Penalty** |
| | **TAXABLE PERIOD:** | **1st Quarter of 2004** |

**CLAIM FOR REFUND**

Dear Margaret:

Enclosed please find IRS Form 843, *Claim for Refund and Request for Abatement* for the above-referenced taxable period. A designated payment was made on July 29, 2008 for the quarter which represents the tax associated with G&H Manufacturing, Ltd.'s sale of one taxable unit for the referenced quarter. A copy of this designation is enclosed for ease of reference.

Also enclosed please find Form 2848 authorizing the undersigned attorney to represent Taxpayer.

Taxpayer respectfully requests that the processing of this claim for refund be done as soon as possible.

Please contact me with any questions. Thank you.

Sincerely,

David C. Gair



EXHIBIT
"F"

7/22/2008 5:57:25 PM Scott A. Jackson 450436068

WKFR 6P0198-091 2

Form **843** (Rev. February 2008) Department of the Treasury Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

Use Form 843 if your claim or request involves:
(a) a refund of one of the taxes (other than income taxes) shown on line 3,
(b) an abatement of employment or certain excise taxes, or
(c) a refund or abatement of interest, penalties, or additions to tax for one of the reasons shown on line 5a.

**Do not** use Form 843 if your claim or request involves:
(a) an overpayment of income taxes (use the appropriate amended income tax return),
(b) a refund of excise taxes based on the nontaxable use or sale of fuels, or
(c) an overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.

Name(s): Scott A. Jackson
Your social security number: 6068
Address (number, street, and room or suite no.): 3215 Hanover Street
Spouse's social security number:
City or town, state, and ZIP code: Dallas, Texas 75225
Employer identification number (EIN):
Name and address shown on return if different from above: G&H Manufacturing, Ltd., 1015 Commercial Blvd., South Arlington, TX 76001-7125
Daytime telephone number:

1 **Period.** Prepare a separate Form 843 for each tax period
From 01/01/2004 to 03/31/2004

2 **Amount** to be refunded or abated
$ 2,410.

3 **Type of tax.** Indicate the type of tax to be refunded or abated or to which the interest, penalty, or addition to tax is related.
☐ Employment ☐ Estate ☐ Gift ☒ Excise (see instructions) ☐ Income

4 **Type of penalty.** If the claim or request involves a penalty, enter the Internal Revenue Code section on which the penalty is based (see instructions). IRC section: 6672

5a **Interest, penalties, and additions to tax.** Check the box that indicates your reason for the request for refund or abatement. (If none apply, go to line 6.)
☐ Interest was assessed as a result of IRS errors or delays.
☐ A penalty or addition to tax was the result of erroneous written advice from the IRS.
☐ Reasonable cause or other reason allowed under the law (other than erroneous written advice) can be shown for not assessing a penalty or addition to tax.

b Dates of payment ▶

6 **Original return.** Indicate the type of return filed to which the tax, interest, penalty, or addition to tax relates.
☐ 706 ☐ 709 ☐ 940 ☐ 941 ☐ 943 ☐ 945
☐ 990-PF ☐ 1040 ☐ 1120 ☐ 4720 ☒ Other (specify) ▶ 720

7 **Explanation.** Explain why you believe this claim or request should be allowed and show the computation of the amount shown on line 2. If you need more space, attach additional sheets.

See Exhibit "A" attached hereto

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the officer's title must be shown.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature (Title, if applicable. Claims by corporations must be signed by an officer.) [signature] Date: 28 July 08

Signature (spouse, if joint return) Date

**Paid Preparer's Use Only**
Preparer's signature ▶ [signature] Date: 7/29/08 Check if self-employed ☐ Preparer's SSN or PTIN: XXX-XX-0481
Firm's name (or yours if self-employed), address, and ZIP code ▶ 1601 Elm Street, Suite 4100 Dallas, TX 75201 EIN 76-0152805 Phone no. 214-969-4135

BKA **For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.** Form **843** (Rev. 02-2008)

# EXHIBIT A

## ATTACHMENT TO IRS FORM 843

| | |
|---|---|
| **TAXPAYER:** | **Scott A. Jackson** |
| **SSN:** | **6068** |
| **TYPE OF TAX:** | **Trust Fund Recovery Penalty** |
| **TAXABLE PERIOD:** | **1st Quarter of 2004** |

The IRS issued Mr. Jackson its Proposed Assessment of the Trust Fund Recovery Penalty (IRS Letter 1153(DO)) dated April 4, 2007 (a copy of which is attached hereto Exhibit B. Mr. Jackson filed his protest (the "Protest") to the proposed assessment on June 4, 2007 (a copy of which is attached hereto as Exhibit C. The Protest, which is fully incorporated herein, discusses generally, the factual and legal bases which demonstrate why the IRS's proposed assessment was in error.

The IRS appeared determined to find against Mr. Jackson, avoiding controlling Supreme Court precedent. The IRS issued its final determination on May 15, 2008 (a copy of which is attached hereto as Exhibit D).

On June 3, 2008, the IRS assessed the Trust Fund Recovery Penalty ("TFRP") against Mr. Jackson. Mr. Jackson was also assessed the TFRP for other periods, including the above-referenced, as follows:

| Taxable Period | Assessment |
|---|---|
| 4Q: 2003 | $60,650.79 |
| 1Q: 2004 | $108,356.38 |
| 2Q: 2004 | $111,906.30 |
| 1Q: 2005 | $32,478.49 |
| **TOTAL** | **$313,391.96** |

The TFRP assessments for the 4th Quarter of 2003, the 1st Quarter of 2004, the 2nd Quarter of 2004 and the 1st Quarter are collectively referred to herein as the "Assessments."

The underlying liabilities for the TFRP Assessments involve excise taxes (IRS Form 720). The corporate entity that incurred the liabilities is:

G&H Manufacturing, Ltd.
1015 Commercial Blvd.
South Arlington, Texas
76001-7125
EIN: 75-2751384

## Central Claim – Statutory TFRP Elements Not Satisfied

The Assessments made against Mr. Jackson are erroneous; liability for the TFRP under IRC § 6672 requires that Mr. Jackson be both a "responsible person" and "willful." Mr. Jackson is neither responsible (he never had the requisite status, duty nor the authority over the financial decision-making of G&H) nor did he willfully fail to collect, truthfully account for, and pay over "trust fund" taxes to the IRS for the periods at issue.

## Additional Claims

1) Mr. Jackson hereby further asserts that the Assessments are barred by the applicable statutes of limitation.
2) Mr. Jackson hereby makes a claim for administrative costs and litigation costs incurred in connection with the Assessments, under IRC § 7430 and as otherwise permitted by law.
3) Mr. Jackson further reserves the right to assert any additional claims which demonstrate that he is not liable for the Assessments as may be discovered administratively or through formal discovery.

Internal Revenue Service

Department of the Treasury

Date: April 4, 2007

Number of this letter: 1153 (DO)

Person to Contact:
Mr. Larry King
Employee Identification Number:
75-11886
IRS Contact Address:
2601 Meacham Blvd. Ste 550
MC:5401NFTW
Fort Worth, Texas 76137
IRS Telephone Number:
817-759-2900 ext 6145
Employer Identification Number
75-2751384
Business Name and Address:
G & H Manufacturing Ltd
1015 Commercial Blvd S
Arlington, TX 76001-7125

Scott A Jackson
3215 Hanover St
Dallas, Tx. 75225

Dear Sir:

Our efforts to collect the federal employment or excise taxes due from the business named above have not resulted in full payment of the liability. We therefore propose to assess a penalty against you as a person required to collect, account for, and pay over withheld taxes for the above business.

Under the provisions of Internal Revenue Code Section 6672, individuals who were required to collect, account for, and pay over these taxes for the business may be personally liable for a penalty if the business doesn't pay the taxes. These taxes, described in the enclosed Form 2751, consist of employment taxes you withheld (or should have withheld) from the employees' wages (and didn't pay) or **excise taxes** you collected (or should have collected) from patrons (and didn't pay), and are commonly referred to as "trust fund taxes".

The penalty we propose to assess against you is a personal liability called the Trust Fund Recovery Penalty. It is equal to the unpaid trust fund taxes which the business still owes the government. If you agree with this penalty for each period shown, please sign Part 1 of the enclosed Form 2751 and return it to us in the enclosed envelope.

If you don't agree, have additional information to support your case, and wish to try to resolve the matter informally, contact the person named at the top of this letter within ten days from the date of this letter.

You also have the right to appeal or protest this action. To preserve your appeal rights you need to mail us your written appeal within 60 days from the date of this letter (75 days if this letter is addressed to you outside the United States). The instructions below explain how to make the request.

EXHIBIT

B

APPEALS

You may appeal your case to the local Appeals Office. Send your written appeal to the attention of the Person to Contact at the address shown at the top of this letter. The dollar amount of the proposed liability for each specific tax period you are protesting affects the form your appeal should take.

| For each period you are protesting, if the proposed penalty amount is: | You should: |
|---|---|
| $25,000 or less | Send a letter listing the issues you disagree with and explain why you disagree. (Small Case Request). |
| Over $25,000 | Submit a formal Written Protest. |

One protest will suffice for all the periods listed on the enclosed Form 2751, however if any one of those periods is more than $25,000, a formal protest must be filed. Include any additional information that you want the Settlement Officer/Appeals Officer to consider. You may still appeal without additional information, but including it at this stage will help us to process your request promptly.

**A SMALL CASE REQUEST** should include:

1. A copy of this letter, or your name, address, social security number, and any information that will help us locate your file;
2. A statement that you want an Appeal's conference;
3. A list of the issues you disagree with and an explanation of why you disagree. Usually, penalty cases like this one involve issues of responsibility and willfulness. Willfulness means that an action was intentional, deliberate or voluntary and not an accident or mistake. Therefore, your statement should include a clear explanation of your duties and responsibilities; and specifically, your duty and authority to collect, account for, and pay the trust fund taxes. Should you disagree with how we calculated the penalty, your statement should identify the dates and amounts of payments that you believe we didn't consider and or/any computation errors that you believe we made.

Please submit two copies of your Small Case Request.

A formal **WRITTEN PROTEST should** include the items below. Pay particular attention to item 6 and the note that follows it.

1. Your name, address, and social security number;

2. A statement that you want a conference;

3. A copy of this letter, or the date and number of this letter;

4. The tax periods involved (see Form 2751);

5. A list of the findings you disagree with;

6. A statement of fact, signed under penalties of perjury, that explains why you disagree and why you believe you shouldn't be charged the penalty. Include specific dates, names, amounts, and locations which support your position. Usually, penalty cases like this one involve issues of responsibility and willfulness. Willfulness means that an action was intentional, deliberate or voluntary and not an accident or mistake. Therefore, your statement should include a clear explanation of your duties and responsibilities; specifically, your duty and authority to collect, account for, and pay the trust fund taxes. Should you disagree with how we calculated the penalty, your statement should identify the dates and amounts of payments that you believe we didn't consider and or/any computation errors that you believe we made;

   **NOTE:**

   To declare that the statement in item 6 is true under penalties of perjury, you must add the following to your statement and sign it:

   > "Under penalties of perjury, I declare that I have examined the facts presented in this statement and any accompanying information, and, to the best of my knowledge and belief, they are true, correct, and complete."

7. If you rely on a law or other authority to support your arguments, explain what it is and how it applies.

**REPRESENTATION**

You may represent yourself at your conference or have someone who is qualified to practice before the Internal Revenue Service represent you. This may be your attorney, a certified public accountant, or another individual enrolled to practice before the IRS. If your representative attends a conference without you, he or she must file a power of attorney or tax information authorization before receiving or inspecting confidential tax information. Form **2848**, Power of Attorney and Declaration of Representative, or Form **8821**, Tax Information Authorization, may be used for this purpose. Both forms are available from any IRS office. A properly written power of attorney or authorization is also acceptable.

If your representatives prepares and signs the protest for you, he or she must substitute a declaration stating:

1. That he or she submitted the protest and accompanying documents, and

2. Whether he or she know personally that the facts stated in the protest and accompanying documents are true and correct.

## CLAIMS FOR REFUND AND CONSIDERATION BY THE COURTS

### CONSIDERATION BY THE COURTS

If you and the IRS still disagree after your conference, we will send you a bill. However, by following the procedures outlined below, you may take your case to the United States Court of Federal Claims or to your United States District Court. These courts have no connection with the IRS.

Before you can file a claim with these courts, you must pay a portion of the liability and file a claim for refund with the IRS, as described below.

### SPECIAL BOND TO DELAY IRS COLLECTION ACTIONS FOR ANY PERIOD AS SOON AS A CLAIM FOR REFUND IS FILED

To request a delay in collection of the penalty by the IRS for any period as soon as you file a claim for refund for that period, you must do the following within 30 days of the date of the official notice of assessment and demand (the first bill) for that period:

1. Pay the tax for one employee for each period (quarter) of liability that you wish to contest, if we've based the amount of the penalty on unpaid employment taxes; or pay the tax for one transaction for each period that you wish to contest, if we've based the amount of the penalty on unpaid excise taxes.
2. File a claim for a refund of the amount(s) you paid, using Form **843,** Claim for Refund and Request for Abatement.
3. Post a bond with the IRS for one and one half times the amount of the penalty that is left after you have made payment in Item 1.

If the IRS denies your claim when you have posted this bond, you then have 30 days to file suit in your United States District Court or the United States Court of Federal Claims before the IRS may apply the bond to your trust fund recovery penalty and the interest accruing on this debt.

**CLAIM FOR REFUND WITH NO SPECIAL BOND**

If you do not file a special bond with a prompt claim for refund, as described above, you may still file a claim for refund following above action items 1 and 2, except these action items do not have to be taken in the first 30 days after the date of the official notice of assessment and demand for the period.

If IRS has not acted on your claim within 6 months from the date you filed it, you can file a suit for refund. You can also file a suit for refund within 2 years after IRS has disallowed your claim.

You should be aware that, if IRS finds that the collection of this penalty is in jeopardy, we may take immediate action to collect it without regard to the 60-day period for submitting a protest mentioned above.

For further information about filing a suit you may contact the Clerk of your District Court or the Clerk of the United States Court of Federal Claims, 717 Madison Place, NW., Washington, DC 20005.

If we do not hear from you within 60 days from the date of this letter (or 75 days, if this letter is addressed to you outside the United States), we will assess the penalty and begin collection action.

Sincerely yours,

Larry King
Revenue Officer

Enclosures:
Form 2751
Publication 1
Envelope

Form **2751**
(Rev. 7-2002)

Department of the Treasury – Internal Revenue Service

# Proposed Assessment of Trust Fund Recovery Penalty

*(Sec. 6672, Internal Revenue Code, or corresponding provisions of prior internal revenue laws)*

## Report of Business Taxpayer's Unpaid Tax Liability

Name and address of business
G & H Manufacturing Ltd
1015 Commercial Blvd S
Arlington, TX 76001-7125

| Tax Return Form Number | Tax Period Ended | Date Return Filed | Date Tax Assessed | Identifying Number | Amount Outstanding | Penalty |
|---|---|---|---|---|---|---|
| 720 | 12/31/2003 | 10/04/2004 | 12/27/2004 | 75-2751384 | $60,650.79 | $60,650.79 |
| 720 | 03/31/2004 | 10/04/2004 | 12/27/2004 | 75-2751384 | $108,356.38 | $108,356.38 |
| 720 | 06/30/2004 | 10/04/2004 | 12/27/2004 | 75-2751384 | $111,906.30 | $111,906.30 |
| 720 | 03/31/2005 | 08/19/2005 | 09/26/2005 | 75-2751384 | $32,478.49 | $32,478.49 |
| 720 | 06/30/2005 | 08/19/2005 | 09/26/2005 | 75-2751384 | $16,854.36 | $16,854.36 |

## Agreement to Assessment and Collection of Trust Fund Recovery Penalty

Name, address, and social security number of person responsible
Scott A. Jackson, 3215 Hanover St, Dallas, Tx. 75225 ssn -6068

I consent to the assessment and collection of the penalty shown for each period, which is equal either to the amount of federal employment taxes withheld from employees' wages or to the amount of federal excise taxes collected from patrons or members, and which was not paid over to the Government by the business named above. I waive the 60-day restriction on notice and demand set forth in Internal Revenue Code Section 6672(b).

Signature of person responsible | Date

**Part 1** - Please sign and return this copy to Internal Revenue Service    Catalog No. 21955U    Form **2751** (Rev. 7-2002)

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com
OFFICIAL USE

7004 2890 0000 7640 6814

Postage $
Certified Fee
Return Receipt Fee (Endorsement Required)
Restricted Delivery Fee (Endorsement Required)
Total Postage & Fees $

Postmark Here

LOVERS LN FINANCE STA. DALLAS TX 75206 USPS

Sent To Mr. Larry King, Internal Revenue Service
Street, Apt. No., or PO Box No. 2601 Meacham Blvd., Suite 550
City, State, ZIP+4 MC: 5401 NFTW Fort Worth, TX

PS Form 3800, June 2002 — See Reverse for Instructions

SENDER: COMPLETE THIS SECTION
■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:
Larry King
Internal Revenue Service
2601 Meacham Blvd., Suite
5401NFTW
Fort Worth, TX 76137

Article Number
(Transfer from service label)
PS Form 3811, February 2004

**Howard & Co., L**
8350 Meadow Road, S
Dallas, Texas 752

Direct Dial: (214) 346-0755
E-mail: jim.howard@jhcpa.com
Fax: (214) 346-0784

June 4, 2007

***VIA FACSIMILE TO (817) 759-2923***

***and***

***VIA CERTIFIED MAIL***

Mr. Larry King
Internal Revenue Service
2601 Meacham Blvd., Suite 550
MC: 5401NFTW
Fort Worth, Texas 76137

Re: Scott A. Jackson ( 6068)
Excise Tax and Responsible Person Penalties for Tax Years 2003, 2004, and 2005
Protest Letter

Dear Mr. King:

This letter is filed in protest of your letter dated April 4, 2007 and the adjustments reflected in the forms enclosed therewith (collectively, the "Agent's Report" prepared by the "Agent") issued to Scott A. Jackson (the "Taxpayer"). We submit this protest on behalf of the Taxpayer. We have previously provided you with powers of attorney.

The following information is provided in accordance with the requirements contained in IRS Publication No. 5:

1. **<u>Taxpayers' Names, Address, Telephone Number, and Identification Numbers:</u>**

| | |
|---|---|
| Names: | Scott A. Jackson |
| Address: | 3215 Hanover Street<br>Dallas, Texas 75225-7640 |
| Telephone Number: | (214) 668-0981 |

EXHIBIT
C

Social Security Number of Scott A. Jackson: 6068

2. **Request for Appeal:**

We request an appeal of all of the proposed assessments of trust fund recovery penalties in Form 2751 of the Agent's Letter.

3. **Date and Number of the Agent's Letter:**

| | |
|---|---|
| Date: | April 4, 2007 |
| Number: | 1153 (DO) |

4. **Tax Periods Involved:**

- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended December 31, 2003
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended March 31, 2004
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended June 30, 2004
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended March 31, 2005
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended June 30, 2005

5. **List of Changes that Taxpayer Disputes:**

The Taxpayer disputes all of the proposed assessments of trust fund recovery penalties in Form 2751 of the Agent's Letter. Specifically, the Taxpayer disputes the proposed assessments of trust fund recovery penalties in Form 2751 of the Agent's Letter from

- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended December 31, 2003 of $60,650.79
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended March 31, 2004 of $108,356.38
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended June 30, 2004 of $111,906.30
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended March 31, 2005 of $32,478.49
- Form 720 Quarterly Federal Excise Tax Return, Tax Period Ended June 30, 2005 of $16,854.36,

for the reasons set forth in detail below. The proposed assessments are based on the

Agent's determination that the Taxpayer was a responsible person in the context of the person's authority over company finances or general decision making who willfully failed to collect, account for, and pay over the required taxes and that as a responsible person, Taxpayer willfully chose to pay creditors instead of satisfying a delinquency that existed for unpaid excise taxes to the U.S. Treasury.

6. **Reasons Taxpayer Disputes the Service's Adjustments:**

Following is a statement of the relevant facts and the law and authority on which the Taxpayer relies.

## STATEMENT OF FACTS

Taxpayer worked for G & H MANUFACTURING, LTD., a Texas limited partnership (the "Partnership") located at 1015 Commercial Boulevard S, Arlington, Texas 76001-7125, from September 2004 to March 2005. In his roles as Vice President and Chief Financial Officer, Taxpayer determined financial policy for the business, directed or authorized payments of bills, opened or closed bank accounts for the business, signed or countersigned checks, and authorized or made federal tax deposits. After terminating the Taxpayer's employment, the Partnership eventually filed bankruptcy and is no longer operating.

Although Taxpayer worked as a consultant on refinancing the Partnership's debts from February 2004 to July 2004, he first learned of the Partnership's delinquent excise taxes when he received an invitation to work as Chief Financial Officer for the Partnership in July 2004. In August or September 2004, Taxpayer hired a Controller for the Partnership who discovered that excise tax returns had not been filed and that tax deposits were due and needed to be paid. The Controller arranged to file the current excise tax returns electronically. Thereafter, the Controller prepared the current returns and during Taxpayer's employment, Taxpayer reviewed and paid all current excise taxes.

As part of the refinancing of the Partnership's debts, a portion of the proceeds were initially earmarked to pay delinquent excise taxes. The Controller discovered large accounting discrepancies when merging two accounting systems in order to streamline the Partnership's bookkeeping and was faced with roughly $2.5 million of previously unrecorded accounts payable, which sabotaged the refinancing and caused continued liquidity issues. There was considerable debate and finger pointing over the $2.5 million of previously unrecorded accounts payable. The investors who were part of the recapitalization of the Partnership argued that their investment should be used to run the business going forward, not to provide relief of delinquent excise taxes to the management and owners of the Partnership, particularly in light of their failure to disclose the extent of their accounting problems.

During March 2005, Taxpayer was discharged from employment and was no longer in a position to remit the excise taxes or file the required quarterly tax returns.

## THE SERVICE'S POSITION

The Service contends that (i) Taxpayer is a responsible person (ii) who willfully failed to collect, account for, and pay over the required taxes.

According to the Agent's Report[1], Taxpayer was VP and CFO of G & H MANUFACTURING, LTD. from July 2004 to March 2005. In those roles, Taxpayer was responsible for determining the financial policy for the business, directing or authorizing payments of bills, opening or closing bank accounts for the business, signing or countersigning checks, authorizing or making federal tax deposits. The Service contends that as a responsible person, Taxpayer functioned as a trustee to collect and remit excise taxes from G & H MANUFACTURING, LTD.'s customers to the U.S. Treasury. There is no dispute that G & H MANUFACTURING, LTD. fulfilled its obligations to collect and remit excise tax to the U.S. Treasury from July 1, 2004 to December 31, 2004.

The Service contends that Taxpayer is liable for excise taxes that should have been collected and remitted before he became a responsible person of G & H MANUFACTURING, LTD. The Service bases its theory on the availability of $600,000 of capital in July 2004, which was earmarked in order of preference: (i) for paying off Comerica, (ii) for cleaning up past due receivables, (iii) for paying accrued excise taxes, and (iv) for paying Taxpayer's fees and expenses.

The Service does not explain why Taxpayer is liable for tax period ended March 31, 2005 or tax period ended June 30, 2005, when Taxpayer was no longer a responsible person having been terminated as the Partnership's CFO.

## TAXPAYER'S POSITION

The Taxpayer contends that Taxpayer was not a responsible person of G & H MANUFACTURING, LTD. during the discussed tax periods.

There is no dispute that G & H MANUFACTURING, LTD. fulfilled its obligations to collect and remit excise tax to the U.S. Treasury from July 1, 2004 to December 31, 2004. The Taxpayer is not liable for excise taxes that should have been collected and remitted before he became a responsible person of G & H MANUFACTURING, LTD.

The Taxpayer denies liability for the tax period ended March 31, 2005 and the tax period ended June 30, 2005, when Taxpayer was no longer a responsible person having been terminated as the Partnership's CFO.

---

[1] Form 4180 Report of Interview with Individual Relative to Trust Fund Recovery Penalty or Personal Liability for Excise Taxes dated April 4, 2007.

## STATEMENT OF LAW AND AUTHORITIES

*Identifying a Responsible Person*

There is no dispute that Taxpayer was a responsible person who fulfilled his obligations to collect and remit excise tax to the U.S. Treasury from July 1, 2004 to December 31, 2004, however, as the court in *Vinick v. Comr.*,[2] stated, "[r]esponsibility during one period does not equate to responsibility in all periods." The court explained that the trial court's inquiry was flawed as a matter of law because it failed to concentrate on the taxpayer's authority during the tax quarters at issue.

*Knowledge of Trust Fund Tax Liability*

Responsibility is a matter of status, duty, and authority - but not knowledge.[3] The mere knowledge that trust fund taxes are not being paid over to the government, while relevant to the issue of willfulness, cannot alone cause responsibility under IRC § 6672. Thus, in *U.S. v. Burger*,[4] a minority shareholder who was aware of the corporation's failure to pay over trust fund taxes to the government, but did not possess any authority over the corporation's financial affairs, was not a responsible person under IRC § 6672. Conversely, the lack of knowledge that trust fund taxes are not being paid does not preclude a finding of responsibility.[5]

Separating knowledge from responsibility is generally more difficult than this simple analysis indicates. Once these individuals are imbued with knowledge of a tax delinquency, and given their position of authority in the corporation, many courts would presumably find some of these same individuals responsible for future delinquencies if they did nothing to address or investigate the problem.[6] For instance, controlling shareholders can remove directors, and directors can remove officers who are not carrying out the tax obligations of the corporation. Similarly, shareholders/directors/officers can at a minimum direct those under their control to comply with the tax law and report their progress.

---

[2] 205 F.3d 1 (1st Cir. 2000), nonacq. on other grounds, 2001-9 I.R.B. *See also Moulton v. U.S.*, 2004-1 USTC ¶50,134 (D. Mass. 2003).

[3] *Davis v. U.S.*, 961 F.2d 867 (9th Cir. 1992); *Thibodeau v. U.S.*, 828 F.2d 1499, 1503 (11th Cir. 1987); *Wood v. U.S.*, 808 F.2d 411, 415 (5th Cir. 1987); *Pototzky v. U.S.*, 85-1 USTC ¶9438 (Cl. Ct. 1985).

[4] 717 F. Supp. 245 (S.D.N.Y. 1989). *See In re Dallas*, 93-1 USTC ¶50,163 (Bankr. S.D. Ala. 1992) (although members of family business had knowledge of the nonpayment of trust fund taxes, they lacked sufficient authority to be classified as responsible persons), *rev'd on other grounds*, 93-1 USTC ¶50,352 (S.D. Ala. 1993).

[5] *Mazo v. U.S.*, 591 F.2d 1151 (5th Cir. 1979), cert. denied sub nom., *Lattimore v. U.S.*, 444 U.S. 842 (1979); *Kalb v. U.S.*, 505 F.2d 506 (2d Cir. 1974).

[6] *Keller v. U.S.*, 93-2 USTC ¶50,551 (D.N.D. 1993), aff'd, 46 F.3d 851 (8th Cir. 1995) (personal representative of estate is liable for trust fund taxes even though not involved in daily operations of estate's business; court focused on fact that he was ultimate decision maker and that he had knowledge of earlier mismanagement and nonpayment of taxes); *Wetzel v. U.S.*, 92-1 USTC ¶50,217 (S.D. Miss. 1992); *In re Premo*, 116 Bankr. 515 (Bankr. E.D. Mich. 1990).

*Determining Willfulness*

In *Slodov v. U.S.*,[7] the Supreme Court considered the scope of liability of an individual becoming a responsible person for the first time after withholding tax liability has accrued and the trust funds have been dissipated. It held that funds collected by the corporation after a change in corporate control are not impressed with a trust for taxes withheld during a prior regime unless those funds are directly traceable to dissipated trust funds; failure to use such later acquired funds to pay federal withholding taxes does not constitute a violation of the IRC § 6672 requirement that the responsible person "pay over" withholding taxes.[8]

Petitioner in *Slodov* assumed control of three corporations at a time when a delinquency existed for unpaid federal taxes withheld from employees' wages, while the specific funds withheld but not paid had been dissipated by predecessor officers and when the corporations had no liquid assets with which to pay the overdue taxes. During the six-month period of petitioner's control the corporations acquired funds sufficient to pay the taxes, but petitioner used the funds to pay employees' wages, rent, suppliers and other creditors, and to meet current business expenses. On petitioner's withdrawal from the corporations' business, he instituted a bankruptcy proceeding, in which the Service filed a claim, including the delinquent back taxes, under IRC § 6672, which imposes personal liability for taxes on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof ...." The Court of Appeals held that petitioner was personally liable for the unpaid taxes under §6672. While petitioner conceded liability for the collection, accounting, and payment of taxes required to be withheld during the period of his control, he disclaimed responsibility with respect to taxes withheld prior thereto, arguing that its conjunctive phrasing made IRC § 6672 inapplicable to him since he was clearly under no duty to collect and account for taxes incurred before that period.

The Service maintained that the statutory language could be construed as describing in terms of their general responsibilities the persons potentially liable under the statute without regard to the fulfillment of all the duties with respect to specific tax dollars, and that IRC § 6672 imposed liability on petitioner as a "responsible person" because sums received during the period of his control were impressed with a trust in favor of the U.S. Treasury for the satisfaction of the overdue taxes and petitioner's willful use of such sums to pay other creditors violated the statute's "pay over" obligation. Though relying primarily on IRC § 6672 for its trust theory of liability, the Service suggested as also applicable IRC § 7501, which provides that "[w]henever a person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of the tax ... shall be held to be a special fund in trust for the United States [which] shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

---

[7] *Slodov v. U.S.*, 1978, 436 U.S. 238 [42 AFTR 2d 78-5011], (98 S. Ct. 1778), 56 L.Ed.2d 251.
[8] *See* 436 U.S. at 258, 98 S. Ct. at 1791, 56 L.Ed. at 269.

The Supreme Court held:

"1. The phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit IRC § 6672 to persons responsible for paying over taxes that require collection (third-party taxes) and not to limit it to persons in a position to perform all three functions with respect to the specific taxes as to which the employer is delinquent. Petitioner's construction could have led to ready evasion of responsibility under IRC § 6672, and was thus at odds with the statute's purpose of assuring payment by third parties of withheld taxes.

2. Neither IRC § 6672, nor § 7501 impresses a trust on the after-acquired funds of an employer for payment of overdue withholding taxes absent tracing of those funds to taxes collected, and petitioner therefore was not liable under § 6672 for using those funds for purposes other than payment of the overdue withholding taxes.

(a) Section 6672 was not intended to impose an absolute liability without personal fault for failure to "pay over" amounts that should have been collected and paid over so that petitioner could not be liable unless he failed to pay funds held in trust for the United States.

(b) Nothing in the language or legislative history of § 6672 suggests that the effect of the "pay over" requirement was to impress a trust on the corporations' after-acquired cash, and the history of § 7501 makes clear that it was not. Since the very reason for adding § 7501 to the Code was that under existing law the liability of the person collecting and withholding the taxes was merely a debt, § 6672, whose predecessor was enacted while the debt concept of liability prevailed, hardly could have been intended to impose a trust on after-acquired cash. Although the trust concept of § 7501 may form the scope of the duty imposed by § 6672, the language of § 7501 makes clear that there must be a nexus between the funds collected and the trust created.

(c) A construction of IRC §§ 7501 and 6672 as imposing a trust on all after-acquired property without regard to the interests of others in those funds would conflict with the priority rules applicable to the collection of back taxes, which give secured parties interests in certain proceeds superior to tax liens."

**CONCLUSION**

Taxpayer was a responsible person for G & H MANUFACTURING, LTD. from July 2004 to mid-March 2005, but not during the periods that the Service is trying to recover excise tax.

*Slodov*, supra, firmly supports Taxpayer's decision to allocate available capital to creditors and away from the U.S. Treasury when the excise taxes were due and unpaid before Taxpayer was a responsible party. Neither IRC § 6672, nor § 7501, impresses a trust on the after-acquired funds of an employer for payment of overdue excise taxes absent tracing of those funds to taxes collected, and Taxpayer therefore was not liable under § 6672 for using those funds for purposes other than payment of the overdue excise taxes.

The Supreme Court in *Slodov*,[9] addresses the public policy reason for denying the liability that the Service proposes to bring against Taxpayer. The Service argued that its construction of the statute is necessary to effectuate the congressional purpose to assure collection and payment of taxes. Although that construction might in this case garner tax dollars otherwise uncollectible, its long-term effect arguably would more likely frustrate than aid the IRS' collection efforts.

As in *Slodov*, at the time the Taxpayer assumed control, G & H MANUFACTURING, LTD. owed back taxes, was overdue on its supplier accounts, and had no cash. To the extent that G & H MANUFACTURING, LTD. had assets unencumbered by liens superior to a tax lien, the Service could have satisfied its claim by levy and sale. But, G & H MANUFACTURING, LTD. did not have such assets. The Service argued in *Slodov*, that in such circumstances, its practice is to be "flexible," and not insist on the discontinuation of operations, thereby substituting for certain loss at least the potential of recovering back taxes if the business makes a financial recovery. The Service argued unsuccessfully for the best of both worlds, that it can avoid a certain loss and nevertheless hold the "responsible person" personally liable to the § 6672 penalty when the Taxpayer uses gross receipts to purchase inventory, or pay wages, or even by using personal funds for those purposes so long as any third-party tax bill remains unpaid.

The Supreme Court recognized the probability of abuse when it is in the Service's interest to encourage the responsible person to continue operation with the hope of receiving payment of the back taxes, and if the attempt fails and the taxes remain unpaid, the Service can simply insist that the § 6672 personal liability penalty attached upon payment of the first dollar to a supplier. The practical effect of that construction of the statute would be that a well-counseled person contemplating assuming control of a financially beleaguered business, such as G & H MANUFACTURING, LTD., owing back excise taxes would recognize that he could do so without incurring personal civil and criminal penalties only if there were available sufficient borrowed or personal funds fully to pay all back excise taxes before doing any business. If that course is unattractive or unavailable to the entity, the Service would be remitted to its claim in bankruptcy.

When an immediate filing for bankruptcy means a total loss, the Service understandably, as it did here, does not discourage the entity from continuing to operate so long as current taxes are paid. As soon as the entity embarked upon that course, however, the "responsible person" is potentially liable to heavy civil and criminal penalties not for doing anything, which compromised the Service's collection efforts, but for doing what the Service regards as maximizing its chances for recovery. As construed by the Service, § 6672 would merely discourage changes of ownership and management of financially troubled businesses and the infusion of equity or debt funding which might accompany it without encouraging employer compliance with tax obligations or facilitating collection of back taxes. Thus, recovery of excise taxes would likely be limited to the situation in which the prospective purchaser or management official is ignorant of § 6672.

[9] *Id.* at 75-5018.

The actions of the Service and its Agent Larry King in this matter are overreaching and abusive. The fact that there is a U.S. Supreme Court case that is directly on point was discussed with Mr. King, who repeatedly suggested that Taxpayer file a written protest letter and take the matter up with the Appeals Office instead of seeking to resolve the issues the Taxpayer's representative brought up, thus requiring the Taxpayer to incur the cost of preparing this written protest letter. Repeated requests to correct the Agent's Report for known and undisputed facts were ignored. Notice is herewith given, that Taxpayer, if successful, will seek reimbursement from the Service for all costs (accountants, attorneys, and other) required addressing this abuse of power.

* * *

Under penalties of perjury, I declare that I have prepared and am submitting this protest and, although I do not have personal knowledge that the facts contained in this protest are true and correct, I ascertained them from sources I believe to be reliable and, accordingly, believe them to be true and correct.

James N. Howard, CPA
Howard & Co., LLP

Enclosure:
*Slodov v. U.S.*, 1978, 436 U.S. 238 [42 AFTR 2d 78-5011], (98 S. Ct. 1778), 56 L.Ed.2d 251.

cc: Mr. Scott A. Jackson
(*w/o encl.*)

American Federal Tax Reports

# SLODOV v. U.S., Cite as 42 AFTR 2d 78-5011 (98 S. Ct. 1778), 05/22/1978

Ike SLODOV, PETITIONER v. U.S., RESPONDENT.

## Case Information:

| | |
|---|---|
| **Code Sec(s):** | |
| **Court Name:** | U.S. Supreme Court, |
| **Docket No.:** | No. 76-1835, |
| **Date Decided:** | 05/22/1978 |
| **Prior History:** | Reversing Court of Appeals, 39 AFTR 2d 77-1423 ( 552 F.2d 159), which reversed District Court, 36 AFTR 2d 75-6044, which affirmed in part and reversed in part Bankruptcy Court, 34 AFTR 2d 74-5772. |
| **Tax Year(s):** | Years 1968, 1969. |
| **Disposition:** | Decision for taxpayer. |
| **Cites:** | 42 AFTR 2d 78-5011, 436 US 238, 98 S Ct 1778, 56 L Ed 2d 251, 78-1 USTC P 9447. |

## HEADNOTE

**1. ADDITIONS TO TAX AND PENALTIES—100% penalty—failure to collect or pay over tax—factors of determination—duties and authorities of parties involved.** Appellate Court decision imposing liability on orthodontist for unpaid withholding taxes of bankrupt food vending corp. reversed. Taxes were due and unpaid before he assumed control of corp. IRS arguments that funds acquired after taxpayer's assumption of control were impressed with trust in favor of U.S. and that use of these funds for other purposes was violation of statute rejected. Statute didn't support finding of trust. Also, if trust were imposed on all after-acquired property it would conflict with priority laws for collection of back taxes.

*Reference(s):* 1978 P-H Fed. ¶37,367.30(25).

**2. Lower court issues not decided on appeal:** ADDITIONS TO TAX AND PENALTIES—100% penalty—failure to collect or pay over tax—factors of determination—intent and actions of parties involved; ADDITIONS TO TAX AND PENALTIES—100% penalty—failure to collect or pay over tax—scope and procedure.

*Reference(s):* 1978 P-H Fed. ¶37,367.15(70); 37,367.35(35).

# OPINION

Certiorari To The United States Court Of Appeals For The Sixth Circuit. Syllabus Petitioner assumed control of three corporations at a time when a delinquency existed for unpaid federal taxes withheld from employees' wages, while the specific funds withheld but not paid had been dissipated by predecessor officers and when the corporations had no liquid assets with which to pay the overdue taxes. During the six-month period of petitioner's control the corporations acquired funds sufficient [pg. 78-5012] to pay the taxes, but petitioner used the funds to pay employees' wages, rent, suppliers and other creditors, and to meet current business expenses. On petitioner's withdrawal from the corporations' business, he instituted a bankruptcy proceeding, in which the IRS filed a claim, including the delinquent back taxes, under §6672 of the Internal Revenue Code of 1954, which imposes personal liability for taxes on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof ...." The Court of Appeals held that petitioner was personally liable for the unpaid taxes under §6672. While petitioner concedes liability for the collection, accounting, and payment of taxes required to be withheld during the period of his control, he disclaims responsibility with respect to taxes withheld prior thereto, arguing that its conjunctive phrasing made §6672 inapplicable to him since he was clearly under no duty to collect and account for taxes incurred before that period. The Government maintains that the statutory language could be construed as describing in terms of their general responsibilities the persons potentially liable under the statute without regard to the fulfillment of all the duties with respect to specific tax dollars, and that §6672 imposed liability on petitioner as a "responsible person" because sums received during the period of his control were impressed with a trust in favor of the Government for the satisfaction of the overdue taxes and petitioner's willful use of such sums to pay other creditors violated the statute's "pay over" obligation. Though relying primarily on §6672 for its trust theory of liability, the Government suggests as also applicable §7501, which provides that "[w]henever a person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of the tax ... shall be held to be a special fund in trust for the United States [which] shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose." Held:

1. The phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit §6672 to persons responsible for paying over taxes that require collection (third-party taxes) and not to limit it to persons in a position to perform all three functions with respect to the specific taxes as to which the employer is delinquent. Petitioner's construction could lead to ready evasion of responsibility under §6672, and is thus at odds with the statute's purpose of assuring payment by third parties of withheld taxes. Pp. 7-11.

2. Neither §6672, nor §7501 impresses a trust on the after-acquired funds of an employer for payment of overdue withholding taxes absent tracing of those funds to taxes collected, and petitioner therefore was not liable under §6672 for using those funds for purposes other than payment of the overdue withholding taxes. Pp. 14-20.

(a) Section 6672 was not intended to impose an absolute liability without personal fault for failure to "pay over" amounts that should have been collected and paid over so that petitioner could not be liable unless he failed to pay funds held in trust for the United States. Pp. 14-15.

(b) Nothing in the language or legislative history of §6672 suggests that the effect of the "pay over" requirement was to impress a trust on the corporations' after-acquired cash, and the history of §7501 makes clear that it was not. Since the very reason for adding §7501 to the Code was that under existing law the liability of the person collecting and

withholding the taxes was *merely a debt,* §6672, whose predecessor was enacted while the debt concept of liability prevailed, hardly could have been intended to impose a trust on after-acquired cash. Although the trust concept of §7501 may inform the scope of the duty imposed by §6672, the language of §7501 makes clear that there must be a nexus between the funds collected and the trust created. Pp. 14-17.

(c) A construction of §§7501 and 6672 as imposing a trust on all after-acquired property without regard to the interests of others in those funds would conflict with the priority rules applicable to the collection of back taxes, which give secured parties interests in certain proceeds superior to tax liens. Pp. 17-20.

552 F.2d 159 [ 39 AFTR 2d 77-1423], reversed.

BRENNAN, J., delivered the opinion of the Court, in which STEWART, MARSHALL, [pg. 78-5013] POWELL, REHNQUIST, and STEVENS, JJ., joined. WHITE, J., filed a dissenting opinion, in which BURGER, C. J., and BLACKMUN, J., joined.

**Judge:** Mr. Justice BRENNAN delivered the opinion of the Court.

**[1]** Petitioner, an orthodontist by profession, on January 31, 1969, purchased the stock and assumed the management of three corporations engaged in the food vending business. The corporations were indebted at the time of the purchase for approximately $250,000 of taxes, including federal wage and Federal Insurance Contribution Act (FICA) taxes withheld from employees wages prior to January 31. The sums withheld had not been paid over when due, however, but had been dissipated by the previous management before petitioner acquired the businesses. After petitioner assumed control, the corporations acquired funds sufficient to pay the taxes, but petitioner used the funds to pay employees' wages, rent, suppliers and other creditors, and to meet other day-to-day expenses incurred in operating the businesses. The question to be decided is whether, in these circumstances, petitioner is personally liable under §6672 of the Internal Revenue Code of 1954, 26 U.S.C. §6672—which imposes personal liability for taxes on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof ...."—for the corporations' unpaid taxes withheld from wages prior to his assumption of control. The Court of Appeals for the Sixth Circuit held that petitioner was personally liable under §6672 for the unpaid taxes. 552 F.2d 159 [ 39 AFTR 2d 77-1423] (1977). We granted certiorari. [1] 434 U.S. 817 (1977). We reverse.

# I

The case arose from the filing by the Internal Revenue Service of a claim for the taxes in a proceeding instituted by petitioner in July 1969 for a Real Property Arrangement under Chapter XII of the Bankruptcy Act. The facts determined after hearing by the bankruptcy judge [ 34 AFTR 2d 74-5772], 74-2 U.S.T.C. §9719 (ND Ohio 1974), are not challenged. Petitioner purchased and assumed managerial control of the Tas-Tee Catering, Tas-Tee Vending, and Charles Corporations on January 31, 1969. When he bought the stock, petitioner understood, and the purchase agreement reflected, that the corporations had an outstanding obligation for taxes in the amount of $250,000 due for payment on January 31, including withheld employee wage and FICA taxes (hereinafter trust fund taxes). During the purchase negotiations, the sellers represented to petitioner that balances in the various corporate checking accounts were sufficient to pay these taxes as well as bills due other creditors. Relying on the representation, petitioner, on Saturday, February 1, sent four checks to the Internal Revenue Service in payment of the taxes. On Monday, February 3, petitioner discovered that the accounts were overdrawn and stopped payment on the checks. Thus, at the time that petitioner assumed control, the corporations had no liquid assets, and whatever trust fund taxes had been collected prior to petitioner's assumption of control had been dissipated.

Petitioner immediately advised the Internal Revenue Service (IRS) that the corporations had no funds

with which to pay the taxes, and solicited guidance concerning how the corporations should proceed. App. 36. There was evidence that IRS officials advised petitioner that they had no objection to his continuing operations so long as current tax obligations were met, and that petitioner agreed to do so and to endeavor to pay the arrearages as soon as possible. Trial Trans. 37-38. IRS never represented that it would hold petitioner harmless under §6672 for the back taxes, however.

To continue operations, petitioner deposited personal funds in the corporate account, and, to obtain inventory, agreed with certain suppliers to pay cash upon delivery. During petitioner's tenure, from January 31 to July 15, 1969, the corporations' gross receipts approximated $130,000 per week for the first few months but declined thereafter. The corporations "established a system of segregating funds for the payment of withheld taxes and did, in fact pay withheld taxes during the period February [pg. 78-5014] 1, 1969, to July 15, 1969." App. 30. The bankruptcy judge found, and IRS concedes, that the $249,212 in taxes paid during this period was approximately sufficient to defray current tax obligations. No taxes owing for periods prior to February 1, were paid however, and in July 1969, the corporations terminated operations and filed for bankruptcy.

## II

Several provisions of the Internal Revenue Code require third persons to collect taxes from the taxpayer. Among the more important are 26 U.S.C. §§3102(a) and 3402(a) which respectively require deduction from wages paid to employees of the employee's share of FICA taxes, and the withholding tax on wages applicable to individual income taxes. The withheld sums are commonly referred to as "trust fund taxes," reflecting the Code's provision that such withholdings or collections are deemed to be a "special fund in trust for the United States." 26 U.S.C. §7501. There is no general requirement that the withheld sums be segregated from the employer's general funds, however, or that they be deposited in a separate bank account until required to be paid to the Treasury. Because the Code requires the employer to collect taxes as wages are paid, 26 U.S.C. §3102(a), while requiring payment of such taxes only quarterly, [2] the funds accumulated during the quarter can be a tempting source of ready cash to a failing corporation beleaguered by creditors. [3] Once net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that IRS has recourse only against the employer for their payment. [4]

An employer who fails to pay taxes withheld from its employees' wages is, of course, liable for the taxes which should have been paid, 26 U.S.C. §§3102(b) and 3403. IRS has several means at its disposal to effect payment of the taxes so withheld. First, once it has been determined that an employer has been inexcusably delinquent, the IRS, upon giving hand-delivered notice, may require the employer, thereafter, and until further notice, to deposit withheld taxes in a special bank trust account within two banking days after collection to be retained there until required to be paid to the Treasury at the quarter's end. 26 U.S.C. §7512. Second, with respect to trust funds past due prior to any such notification, the amount collected or withheld "shall be held to be a special fund in trust for the United States [and] [t]he amount of such fund shall be assessed, collected and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose." 26 U.S.C. §7501. Thus there is made applicable to employment taxes withheld but not paid the full range of collection methods available for the collection of taxes generally. After assessment, notice, and demand, [5] IRS may, therefore, create a lien upon the property of the employer, 26 U.S.C. §6321, and levy, distrain and sell the employer's property, in satisfaction. 26 U.S.C. §§6331 to 6344.

Third, penalties may be assessed against the delinquent employer. Section 6656 of the Code imposes a penalty of 5% of the underpayment of any tax required to be deposited, and 26 U.S.C. §§7202 and 7215 provide criminal penalties respectively for willful failure to "collect, or truthfully account for and pay over" employment taxes, and for failure to comply with the requirements of §7512, discussed supra, regarding special accounting requirements upon notice by the Secretary.

Finally, as in this case, the officers or employees of the employer responsible for effectuating the collection and payment of employment taxes who willfully fail to do so are made personally liable to a

"penalty" equal to the amount of the delinquent taxes. Section 6672 provides, inter alia:

> "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully [pg. 78-5015] account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over ...."

Section 6671(b) defines "person," for purposes of §6672, as including "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." Also, §7202 of the Code, [6] which tracks the wording of §6672, makes a violation punishable as a felony subject to fine of $10,000, and imprisonment for 5 years. Thus, an employer-official or other employee responsible for collecting and paying taxes who willfully fails to do so is subject to both a civil penalty equivalent to 100% of the taxes not collected or paid, and to a felony conviction. Only the application to petitioner of the civil penalty provision, §6672, is at issue in this case.

## III

When the same individual or individuals who caused the delinquency in any tax quarter are also the "responsible persons" [7] at the time the Government's efforts to collect from the employer have failed, and it seeks recourse against the "responsible employees," see IRS policy statement P-5-60, IRS Manual, MT 1218-56, there is no question that §6672 is applicable to them. It is the situation that arises when there has been a change of control of the employer enterprise, here corporations, prior to the expiration of a tax quarter, or at a time when a tax delinquency for past quarters already exists that creates the question for our decision. In this case, petitioner assumed control at a time when a delinquency existed for unpaid employment taxes, while the specific funds withheld but not paid had been dissipated by predecessor officers and when the corporation had no liquid assets with which to pay the overdue taxes.

## A

Petitioner concedes that he was subject to personal liability under §6672 as a person responsible for the collection, accounting and payment of employment taxes required to be withheld between January 31, 1969, when he assumed control of the corporations and July 15, 1969 when he resigned. Tr. of Oral Arg. 8. His contention is that he was not, however, a responsible person within §6672 with respect to taxes withheld prior to his assumption of control and that §6672 consequently imposed no duty upon him to pay the taxes collected by his predecessors. Petitioner argues that this construction of §6672 follows necessarily from the statute's limitation of personal liability to "[a]ny person required to collect, truthfully account for *and* pay over any tax imposed by this title," who willfully fails to discharge those responsibilities (emphasis added). He argues that since the obligations are phrased in the conjunctive, a person can be subject to the section only if all three duties—(1) to collect, (2) truthfully account for and (3) pay over—were applicable to him with respect to the tax dollars in question. See McCollough v. United States, 462 F.2d 588 [ 30 AFTR 2d 72-5217] (CA 5 1972). On the other hand, as the Government argues, the language could be construed as describing in terms of their general responsibilities, the persons potentially liable under the statute, without regard to whether those persons were in a position to perform all of the duties with respect to the specific tax dollars in question. Although neither construction is inconsistent with the language of the statute, we reject petitioner's as inconsistent with its purpose.

Sections 6672 and 7202 were designed to assure compliance by the employer with its obligation to withhold and pay the sums withheld, by subjecting the employer's officials responsible for the employer's decisions regarding withholding and payment to civil and criminal penalties for the employer's [pg. 78-5016] delinquency. If §6672 were given petitioner's construction, the penalties

easily could be evaded by changes in officials' responsibilities prior to the expiration of any quarter. Because the duty to *pay over* the tax arises only at the quarter's end, a "responsible person" who willfully failed to *collect* taxes would escape personal liability for that failure simply by resigning his position, and transferring to another the decisionmaking responsibility prior to the quarter's end. [8] Obversely, a "responsible person" assuming control prior to the quarter's end could, without incurring personal liability under §6672, willfully dissipate the trust funds collected and segregated by his predecessor. [9]

That this result, obviously at odds with the statute's purpose to assure payment of withheld taxes, was not intended is buttressed by the history of the provision. The predecessor of §6672, §1308 (c), Revenue Act of 1918, §1308 (c), 40 Stat., pt. 1, 1143 (1919), provided, inter alia: "Any person who willfully refuses to pay, collect, or truthfully account for and pay over [taxes enumerated in §1308(a)] shall ... be liable to a penalty of the amount of the tax evaded or not paid, collected, or accounted for and paid over ..." [10] The statute remained unchanged in this respect until 1954 when the successor section to §1308(c), [11] was revised to its present form. Both before and after the 1954 revision the "person" potentially liable under the statute was defined in a separate provision, §1308(d), succeeded by present §6671(b), as, including "an officer or employee of a corporation, or a member or employer of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." When, in 1954, Congress added the phrase modifying person—"Any person required to collect, truthfully account for, and pay over any tax imposed by this title"—it was not seeking further to describe the class of persons defined in §6671(b) upon whom fell the responsibility for collecting taxes, but was attempting to clarify the type of tax to which the penalty section was applicable. Since under the 1954 amendment the penalty would otherwise be applicable to "any tax imposed by this title," the phrase modifying person was necessary to insure that the penalty provided by that section would be read as applicable only to failure to pay taxes which *require collection,* that is, third-party taxes, and not failure to pay *"any* tax imposed by this title," which, of course, would include *direct* taxes such as employer FICA and income taxes. As both the House and Senate Committees expressed it, "the application of this penalty is limited only to collected or withheld taxes which are imposed on some person other than the person who is required to collect, account for and pay over, the tax." [12] Thus, by adding the phrase modifying person, Congress was attempting [pg. 78-5017] to clarify the type of tax to which the penalty section was applicable, perhaps inartfully, by reference to the duty of the person required to collect them. This view is supported by the fact that the Commissioner of Internal Revenue issued a regulation shortly after the amendment, limiting the application of the §6672 penalty to third-party taxes. 22 Fed. Reg. 9148 (1957), now codified as, Treas. Reg. §301.6672-1, 26 CFR §301.6672-1 (1977).

We conclude therefore that the phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit §6672 to persons responsible for collection of third party taxes and not to limit it to those persons in a position to perform all three of the enumerated duties with respect to the tax dollars in question. [13]

We turn then to the Government's contention that petitioner was subject to personal liability under §6672 when during the period in which he was a responsible person, the corporations generated gross receipts sufficient to pay the back taxes, but used the funds for other purposes.

**B**

Although at the time petitioner became a responsible person the trust-fund taxes had been dissipated and the corporations had no liquid assets, the Government contends that §6672 imposed civil liability upon petitioner because sums received from sales in carrying on the businesses after January 31, 1969, were impressed with a trust in favor of the United States for the satisfaction of overdue employment taxes, and petitioner's willful use of those funds to pay creditors other than the United States, violated the obligation to "pay over" imposed by §6672. The Government does not argue that the statute requires a "responsible person" to liquidate corporate assets to pay the back taxes upon assuming control, however; it argues only that a trust was impressed on all cash received by the

corporations. Tr. of Oral Arg. 26, 28-29, 30-31, 32. We think that the construction of §6672 would not advance the statute's purpose, and moreover, is inconsistent with the context and legislative history of the provision and its relation to the Code's priority rule applicable to collection of back taxes.

**(1)**

The Government argues that its construction of the statute is necessary to effectuate the congressional purpose to assure collection and payment of taxes. Although that construction might in this case garner tax dollars otherwise uncollectible, its long-term effect arguably would more likely frustrate than aid the IRS' collection efforts.

At the time petitioner assumed control, the corporations owed back taxes, were overdue on their supplier accounts, and had no cash. To the extent that the corporations had assets unencumbered by liens superior to a tax lien, IRS could satisfy its claim by levy and sale. But as will often be the case, the corporations here apparently did not have such assets. The Government admits that in such circumstances, the IRS' practice is to be "flexible," Tr. of Oral Arg. 27, 28, 32, 48, and does not insist that the corporation discontinue operations, thereby substituting for certain loss at least the potential of recovering back taxes if the corporation makes a financial recovery. It argues nevertheless that the "responsible person" renders himself personally liable to the §6672 penalty by using gross receipts to purchase inventory, or pay wages, or even by using personal funds for those purposes, [14] so long as any [pg. 78-5018] third-party employment tax bill remains unpaid. [15]

Thus although it is in IRS' interest to encourage the responsible person to continue operation with the hope of receiving payment of the back taxes, if the attempt fails and the taxes remain unpaid, IRS insists that the §6672 personal liability penalty attached upon payment of the first dollar to a supplier. The practical effect of that construction of the statute would be that a well-counseled person contemplating assuming control of a financially beleaguered corporation owing back employment taxes would recognize that he could do so without incurring personal civil and criminal penalties only if there were available sufficient borrowed or personal funds fully to pay all back employment taxes before doing *any* business. If that course is unattractive or unavailable to the corporation, the Government will be remitted to its claim in bankruptcy. When an immediate filing for bankruptcy means a total loss, the Government understandably, as it did here, does not discourage the corporation from continuing to operate so long as current taxes are paid. As soon as the corporation embarks upon that course, however, the "responsible person" is potentially liable to heavy civil and criminal penalties not for doing anything which compromised the Government's collection efforts, but for doing what the Government regards as maximizing its chances for recovery. As construed by the Government, §6672 would merely discourage changes of ownership and management of financially troubled corporations and the infusion of equity or debt funding which might accompany it without encouraging employer compliance with tax obligations or facilitating collection of back taxes. Thus, recovery of employer taxes would likely be limited to the situation in which the prospective purchaser or management official is ignorant of §6672. [16]

**(2)**

As noted in the previous section, §6672 as construed by the Government would, in effect, make the responsible person assuming control of a business a guarantor for payment of the delinquent taxes simply by undertaking to continue operation of the business. That construction is precluded by the history and context of §6672 and cognate provisions of the code.

Section 6672 cannot be read as imposing upon the responsible person an absolute duty to "pay over" amounts which should have been collected and withheld. The fact that the provision imposes a "penalty" and is violated only by a "willful failure" is itself strong evidence that it was not intended to impose liability without personal fault. Congress, moreover, has not made corporate officers personally liable for the corporation's tax obligations generally, and §6672 therefore should be construed in a way which respects that policy choice. The Government's concession—that §6672 does not impose a duty